363 So.2d 147 (1978)
Dianne Lynn MATTINGLY, Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Appellee.
No. 76-1312.
District Court of Appeal of Florida, Fourth District.
September 20, 1978.
Rehearing Denied October 31, 1978.
*148 Joe N. Unger of Law Offices of Joe N. Unger, Podhurst, Orseck & Parks, Miami, and Wolfson, Diamond, Logan & Edge, Miami Beach, for appellant.
Michael D. Stewart and M. Jerome Elmore of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
MOORE, Judge.
In this appeal we are called upon to review the provisions of the uninsured motorist statute, Section 627.727(1), Florida Statutes (1975). The appellant Dianne Lynn Mattingly, is seeking reversal of an adverse summary judgment on the issue of the amount of coverage provided to her in a policy issued by the appellee, Liberty Mutual Insurance Company.
The parties agree that there are no factual disputes. Dianne Mattingly leased a motor vehicle from Terry Auto Leasing, Inc. for a term of 34 months. By the terms of the lease liability insurance was provided on the leased vehicle by Terry. The insurance provided was written by Liberty Mutual in a policy issued to Ford Motor Company. Ford leased motor vehicles to Terry who in turn leased the vehicles to members of the public, in this case Dianne Mattingly. No reference to uninsured motorist coverage was contained in the lease between Terry and Mattingly; however, it is undisputed that the terms of the Liberty Mutual policy provide uninsured motorist coverage for Mattingly. The sole question in this appeal is the amount of such coverage.
The policy in question was first issued to Ford in 1965 and provided liability coverage in the amount of $100,000.00-$300,000.00 and uninsured motorist coverage in the amount of $10,000.00-$20,000.00. From the beginning, Ford's instructions to Liberty Mutual were to provide uninsured motorist coverage only for those states which require it and in the minimum amounts allowed by law. In essence then, Liberty Mutual was responsible for keeping the policy in compliance with the law of the various states. The liability limits in the policy remained the same.
Pursuant to her interpretation of Section 627.727(1), Dianne Mattingly claimed uninsured motorist coverage equal to the limits of the liability insurance after she had had an accident with an uninsured motorist. In a final declaratory judgment the trial court held that she was entitled to a maximum of $10,000.00 in uninsured motorist coverage under the terms of the insurance policy which covered the automobile she had rented.
Section 627.727(1) reads as follows:

*149 "627.727 Automobile liability insurance; uninsured vehicle coverage; insolvent insurer protection. 
(1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in not less than the limits of the liability insurance purchased by the named insured for bodily injury, or such lower limits complying the company's rating plan as may be selected by the named insured, under provisions filed with and approved by the department, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage; and provided further, that when a vehicle is leased for a period of one year or longer and the lessor of such vehicle by the terms of the lease contract provides liability coverage on the leased vehicle in a policy wherein the lessee is a named insured or on a certificate of a master policy issued to the lessor, the lessee of such vehicle shall have the sole privilege to reject uninsured motorist's coverage. .. ." (Emphasis added).
This statute required uninsured motorist coverage to be provided in an amount equal to, or exceeding, the policy's limits for personal injury liability unless rejected by any insured named in the policy and then only to the extent of such rejection or in such amount as may have been selected by the named insured. As noted above, the statute also addresses the problem of a long term lessee wherein the lessee is a named insured or named on a certificate of a master policy issued to the lessor, in which case the lessee has the sole privilege of rejecting uninsured motorist coverage. It was thus appellant's contention that she, and only she, could have rejected the uninsured motorist coverage. Because she did not reject such coverage she was, therefore, entitled to the maximum limits provided for personal injury liability. We disagree.
Appellant was neither a named insured nor was she listed on a certificate of a master policy issued to her lessor. She did not therefore have the legislatively created privilege to reject uninsured motorist coverage. As an additional insured under the policy issued by the appellee, the appellant was afforded uninsured motorist coverage in the amounts selected by appellee, Ford Motor Company, which, as the named insured, was the only party privileged to select coverage in a lesser amount.
Although not directly on point this interpretation of the statute is consistent with the principles set forth in Guardado v. Greyhound Rent-A-Car, Inc., 340 So.2d 510 (Fla. 3d DCA 1977); Morpurgo v. Greyhound Rent-A-Car, Inc., 339 So.2d 718 (Fla. 1st DCA 1976), and Kohly v. Royal Indemnity Co., 190 So.2d 819 (Fla. 3d DCA 1966), cert. den., 200 So.2d 813 (Fla. 1967). "The problem is one for legislative action, not judicial fiat." Kohly at 822.
Accordingly, the judgment of the trial court is affirmed.
CROSS, J., concurs.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting:
Section 627.727(1) provided in part at the time in question:
... and provided further, that when a vehicle is leased for a period of one year or longer and the lessor of such vehicle by the terms of the lease contract provides liability coverage on the leased vehicle in a policy wherein the lessee is a named insured or on a certificate of a master policy issued to the lessor, the lessee of such vehicle shall have the sole privilege to reject uninsured motorist's coverage.
*150 I believe that this portion of the statute expresses a clear intent by the legislature, in cases of long term leases of automobiles in which liability coverage is provided to grant the lessee the exclusive right to select the amount, if any, of uninsured motorist coverage. Here, the lessee, Dianne Mattingly, had the exclusive right to reject, in whole or in part, the uninsured motorist coverage. She had the sole right to determine the amount of such coverage. But it is undisputed that she was not advised of the options available and she did not reject such coverage in whole or in part. Accordingly, the policy should be deemed as a matter of law to provide coverage in not less than the limits of the liability insurance, in this case $100,000.00-300,000.00.[1]
The majority states that Mattingly was neither a named insured or on a certificate of a master policy issued to the lessor. How else did Mattingly receive coverage under the policy issued to Ford? By the terms of the lease Terry provided liability insurance to Mattingly. A fee was charged. Terry in turn paid Ford to provide liability insurance for Terry's lessees. The parties all agree that this coverage was provided to Terry's lessees, here Mattingly, by the Liberty Mutual master policy. The majority is simply allowing the device of a sub-lease to defeat the clear intent of the legislature.
The majority also relies on the statutory provision that the uninsured motorist coverage may be in:
... such lower limits complying with the company's rating plan as may be selected by the named insured, under provisions filed with and approved by the department, ...
And the even further language:
... provided, however, that the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage ...
I recognize there is some conflict between these provisions and the later provision regarding leased vehicles. However, I believe the later and clearly expressed provision giving lessees the sole privilege to reject the coverage is controlling. I also believe that this interpretation is in accord with the public policy considerations relied on by the legislature in enacting this statute.
Under the majority holding, the requirement for uninsured motorist coverage on leased vehicles is rendered virtually meaningless since the lessor as either "the named insured" or as "any insured named in the policy", can reject the coverage notwithstanding the legislature's grant of the right solely to the lessee. Likewise the purpose of the statute can be defeated by the use of sub-leases as was involved here.
NOTES
[1] Lumbermen's Mutual Casualty Company v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978).