DANIEL S. PEARSON, Judge.
The facts are undisputed. Murray Hoch-berg was killed when the car he was driving collided with a car driven by one Cusano, an uninsured motorist. Cusano’s negligence was the sole legal cause of Hochberg’s death.
The vehicle driven by Hochberg was leased by Genway, Inc. to Gem Cabinet Company, Hochberg’s employer. The term of the lease was twenty-six months. As required by the lease, the lessor, Genway, provided liability insurance of $1,000,000 covering itself, the lessee and any person, *450 such as Hochberg, authorized to drive the vehicle. In the insurance policy, obtained from Midland Insurance Company, as well as in a certificate of a master policy issued by Midland, the lessee, Gem Cabinet, was designated a named insured. An endorsement to the policy shows that only Genway, the lessor, rejected uninsured motorist coverage.
Midland properly concedes that by virtue of Section 627.727(1), Florida Statutes (1977), Genway’s rejection of uninsured motorist coverage was ineffective, since the exclusive privilege to reject uninsured motorist coverage was vested in the lessee. That statute, in pertinent part, provides:
“[Wjhen a vehicle is leased for a period of 1 year or longer and the lessor of such vehicle, by the terms of the lease contract, provides liability coverage on the leased vehicle in a policy wherein the lessee is a named insured or on a certificate of a master policy issued to the lessor, the lessee of such vehicle shall have the sole privilege to reject uninsured motorist coverage.” (emphasis supplied).
Midland contends, however, that (1) the lessor’s abortive rejection of this coverage was, ipso facto, a selection of the lowest permissible limit of uninsured motorist coverage under Midland’s rating plan, that is, $10,000; and (2) the lessor’s right to select such a limit was unaffected by the fact that only the lessee had the right to reject uninsured motorist coverage. In support of this contention, it relies on Section 627.727(2), Florida Statutes (1977), which says, in pertinent part:
“The limits of uninsured motorist coverage shall be not less than the limits of bodily injury [protection] ... or such lower limit complying with the company’s rating plan as may be selected by the named insured, ...” (emphasis supplied).
We only address Midland’s second contention, since if, as we now hold, the lessor had no right to select a lower limit of uninsured motorist coverage, we need not reach the question of whether a rejection which is a nullity under the statute is transferred into a selection of the lowest limits of coverage.
The exclusive privilege to reject uninsured motorist coverage given to a long-term lessee of a vehicle who is a named insured is an exclusive privilege, not only to reject such coverage entirely, but, as well, to reject it in part by opting for lesser limits. The right given “the named insured” in Section 627.727(2) to select a lower limit of uninsured motorist coverage is not a right which may be exercised by a lessor who does not have the “privilege to reject” under subsection (1) of Section 627.-727. It is apparent that as between the lessor and lessee of a long-term vehicle lease agreement, it is the lessee who has the only substantial interest in uninsured motorist coverage, and obvious that the legislature recognized that interest when, in Section 627.727(1), it vested in the long-term lessee who is a named insured the exclusive privilege to reject uninsured motorist coverage. To accept Midland’s argument that the legislature intended by Section 627.727(2) to repose in a long-term lessor the right to select the lowest permissible uninsured motorist coverage limits is to ascribe to the legislature an intent to effectively eviscerate the exclusive privilege of rejection. This we will not do.
Mattingly v. Liberty Mutual Insurance Company, 363 So.2d 147 (Fla. 4th DCA 1978), does not, as Midland suggests, dictate a different result. In that case, Mrs. Mat-tingly, who had leased a vehicle from Terry Auto Leasing, Inc., which in turn had leased the vehicle from Ford Motor Company, was held not to be entitled to the full benefits of uninsured motorist coverage because of this sublease arrangement under which she “. . . was neither a named insured nor was she listed on a certificate of a master policy issued to her lessor.” Unlike the lessee in the present case, Mrs. Mattingly did not “have the legislatively created privilege to reject uninsured motorist coverage.”[1] *451 Where, however, one has the legislatively created exclusive privilege to reject, one has the corresponding exclusive privilege to select.
Accordingly, we affirm the trial court’s partial summary judgment entered in favor of the personal representative of Mr. Hoch-berg’s estate which adjudged that the applicable uninsured motorist coverage limits are the equal of the bodily injury liability insurance provided in the policy, that is, $1,000,000.
Affirmed.

. Our distinguishing of Mattingly is not to be taken as an expression of agreement with the result reached in Mattingly. We do not have before us the case of a person who is not a *451 named insured, and we need not choose between the Mattingly majority and Judge An-stead’s dissent. If Mattingly is read to mean that had Mrs. Mattingly been a named insured, Ford would not have had the privilege of selecting uninsured motorist coverage in a lesser amount, it is perfectly compatible with the result we reach. We believe this to be the correct reading of Mattingly, since if the case meant to declare that Ford had an unequivocal right to select lesser coverage under Section 627.727(2), whether or not Mrs. Mattingly was a named insured would be irrelevant and, presumably, not the subject of discussion in the opinion. But if Mattingly does stand for the proposition that Ford had the right to select even were Mrs. Mattingly a named insured, then we choose not to follow it.