399 So.2d 1051 (1981)
James A. MAXWELL, Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Appellee.
No. TT-314.
District Court of Appeal of Florida, First District.
June 16, 1981.
*1052 Edwin F. Blanton of Novey & Blanton, Tallahassee, for appellant.
R. Jeremy Solomon of McConnaughhay & Roland, Tallahassee, for appellee.
LARRY G. SMITH, Judge.
Maxwell appeals a declaratory judgment finding that the limits of uninsured motorist coverage provided by his employer's insurer, United States Fidelity and Guaranty Company (USF&G), were those provided in the policy of $10,000 per person and $20,000 per accident. Maxwell raises two issues for our consideration: First, he urges that the insured was unable to make an informed rejection of uninsured motorist (UM) coverage and therefore the UM coverage is equal to the bodily injury (BI) coverage. Secondly, he argues that since the vehicle involved in the accident was added to the insurance policy by endorsement several months after the policy had been issued and delivered and the insurer failed to renew the UM offer at that time, the insured was not given an opportunity to reject the added coverage and therefore the UM coverage limits are equal to BI coverage limits. We affirm.
On February 1, 1978, the named insured, Magnus Peavy, acquired fleet coverage for his vehicles from USF&G. The fleet policy, issued February 1, 1978, had BI liability limits of $500,000 and UM coverage limits of $10,000-$20,000. The vehicle in which Maxwell was driving at the time of the accident was added to the fleet policy several months after February 1, 1978 by endorsement, and an additional premium was charged for the new coverage. The agent did not then advise Peavy he had the right to UM coverage in the same amount as his BI limits, and none was requested. On December 23, 1978, Maxwell suffered severe injuries in an automobile accident caused by a "phantom" vehicle. Maxwell's damages far exceeded the uninsured motorist's limits of $10,000-$20,000 in the fleet policy and the insurer denied coverage beyond those limits. Maxwell then filed a complaint for declaratory judgment to determine the scope of the UM coverage.
The trial court, while not deciding the issue of whether Maxwell was operating the insured vehicle with the consent of the owner when the accident occurred, found (1) that the insured had been offered UM coverage equal to his BI liability coverage for the policy period from February 1, 1978 to February 1, 1979, and had rejected it; (2) that the insured was an intelligent businessman who relied upon his insurance agent for information, and that there was no evidence he was furnished incorrect information; (3) that the policy covered from 40-50 vehicles and that vehicles would from time to time be added or deleted by endorsement; and (4) that it was the intention of the parties that the rejection applicable to the fleet policy effective February 1, 1978 apply to all vehicles added during the term of the policy. The court thereupon held that since Maxwell was operating a vehicle *1053 which had been added to the policy at the time of the accident, the limits of the UM coverage provided by USF&G's policy were $10,000 per person and $20,000 per accident, in accordance with the rejection applicable to the fleet policy.
Although the trial court ruled otherwise, Maxwell argues before us that the insured failed to make a knowing and informed rejection of UM limits in an amount equal to his BI limits when the policy was first issued. In response to this argument, we note this was a factual issue resolved in favor of the insurer by the trial judge and the trial judge's ruling comes to this court clothed with a presumption of correctness. Further, we agree there is competent and substantial evidence supporting the finding that the insured knowingly and intelligently rejected UM coverage equal to his BI liability coverage when the fleet policy was issued on February 1, 1978. Therefore, we decline to reverse on this point.
We turn now to Maxwell's contention that the endorsement adding the vehicle involved in the accident to the policy constitutes a new policy within the meaning of Section 627.727(1) and (2), Florida Statutes (1977). This statute requires that an insurer make an offer of UM coverage to the insured in the amounts up to BI limits for each new insurance policy issued in the state. In support of his contention that the endorsement constitutes a separate contract of insurance for which the insurer must renew the UM offer, Maxwell relies on United States Fire Insurance Company v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977), which held that an insurance policy endorsement to add an additional automobile after the effective date of an amendment to Section 627.727, Florida Statutes (1973) increasing coverage requirements for uninsured and underinsured motorist coverage was a separate and severable contract so that the new statutory limits for coverage were applicable.
We cannot agree with this application of the holding in Van Iderstyne. In that case the issue was: Which law should apply, the law in effect at the time the policy was issued (which did not require the policy to provide uninsured and underinsured motorist coverage), or the law in effect at the time of the endorsement adding another automobile (which required the policy to include such coverage, unless rejected)? The court answered, not by finding that the endorsement constituted a reissuance or redelivery of the entire policy (although the court considered and apparently rejected this as a "possible" interpretation, (opinion page 673)), but by reasoning that since the law at the time of the endorsement required UM coverage, and the endorsement was a "separate and severable contract," the court would be required, in effect, to "write into the policy and/or the endorsement" the required coverage.
The issue in the case before us, on the other hand, is not what law to apply in determining the obligation of the insurer under the policy and endorsement. Rather, the issue is how to construe the statutory law in effect at the time of the issuance of the policy with reference to a later endorsement adding another vehicle to the policy coverage. Since both the facts and question of law involved differ from those in Van Iderstyne, we see no reason why that case should lead us to reach the same result.
Put very simply, does the statute require the insurer to obtain a new rejection of UM coverage (up to the limits of liability for bodily injury) when the company adds another vehicle by endorsement, after the insured has already knowingly rejected the extra coverage as to the policy itself? We answer this question in the negative, as did the trial judge, under the factual circumstances presented by this case. While we agree with Maxwell that the provisions of Section 627.727(1) and (2) require that the insurer "make an offer of uninsured motorist coverage to the insured in the amounts up to the bodily injury limits for each new insurance policy issued in the State," we do not agree that the addition of another vehicle by endorsement is the issuance of a "new insurance policy," and furthermore, the opinion in Van Iderstyne makes it clear that for purposes of applying *1054 this statute, it is not. There the court stated (Van Iderstyne, at 673):
There is no question that the endorsement and the policy are interrelated and interdependent. If it were not for the endorsement the second automobile would not be covered and if it were not for the policy we wouldn't know most of the terms of the coverage.
That the policy and the endorsement are "interrelated and interdependent" does not make them the same thing. The statute speaks of "coverage" of the "policy," and it creates no burden upon the insurer to provide for or obtain a new rejection of UM coverage when the vehicles covered by the policy are simply changed by endorsement. The issue is very similar to that presented by the "replacement" of a vehicle and requires no different interpretation of this statute. See Kennilworth Insurance Company v. McCormick, 394 So.2d 1037 (Fla. 1st DCA 1981); State Farm Mutual Automobile Insurance Company v. Bergman, 387 So.2d 494 (Fla. 5th DCA 1980); United States Fidelity and Guaranty Company v. Waln, 395 So.2d 1211 (Fla. 4th DCA 1981).
As previously noted, the trial judge found that the policy covered from 40-50 vehicles, that vehicles would be from time to time added or deleted by endorsement, and that it was the intention of the parties that the rejection applicable to the fleet policy would apply to all vehicles added during the term of the policy. Consistent with the intention of the parties to this fleet policy, the insured added 13 vehicles and deleted 12 during the policy year. It does not appear to us that the addition of each vehicle under these circumstances must be determined, as a matter of law, to constitute a change in the basic policy in a "material respect" so as to trigger the necessity for an additional rejection of UM coverage. See Hartford Accident and Indemnity Company v. Sheffield, 375 So.2d 598, 600 (Fla. 3rd DCA 1979), Footnote 3.
Our analysis of the Fourth District's Van Iderstyne decision presents the issue involved and the rationale behind the decision in a somewhat different light than did a different panel of the same court in Waln, supra. With regard to Van Iderstyne, the court stated:
We have previously held that the addition of an automobile by endorsement to an insurance policy required the insurance company to afford the insured a new opportunity to reject uninsured motorist coverage. United States Fire Insurance Company v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977). By implication that case stands for the proposition that the addition of an automobile, requiring the establishment of new and different insurance coverages, constitutes a material change in the policy. Thus, the "renewal policy" exception does not apply. The issue here is whether a substitution of automobiles similarly constitutes a material change. This question has recently been answered in the negative. State Farm Mutual Automobile Insurance Company v. Bergman, 387 So.2d 494 (Fla. 5th DCA 1980).
However, we think it is pertinent to mention that the Waln opinion expressly adopts the "controlling law" found in Sheffield, supra, under which the test is whether the "original policy" has been changed in any material respect (Waln, 395 So.2d at 1214). "If it has," said the court, "then the policy is `new' rather than a `renewal' and the insurance company is required to provide the insured with the opportunity to reject uninsured motorist coverage or to elect a decreased amount." 395 So.2d at 1214. The Waln opinion concluded on this issue (Id. at 1214):
We hold that in the absence of additional specifically requested changes, in the case of a simple substitution of automobiles, where the number of automobiles remains the same and there is no change in the bodily injury liability coverages the policy has not been changed in any material respect. That being so, the policy in effect here at the time of the accident was a renewal policy ...
Although the Waln opinion indicates otherwise, in our view once it is determined that the policy is not changed in a material *1055 respect it is unnecessary to also find that the change is a "renewal policy" in order to relieve the company of the need to secure a new rejection of UM coverage.
In accordance with the trial court's findings that no changes in the fleet policy were made other than the addition and deletion of vehicles from time to time during the policy period, as contemplated by the parties at the time of issuance of the original policy, and in contemplation of which the insured at the time of the issuance of the original policy rejected higher limits of UM coverage, we hold the mere addition by endorsement of another vehicle to the coverage afforded by the original fleet policy, during the policy period, does not constitute the issuance of a "new insurance policy" under the statute. Thus, in our view there is no more reason here than in the Bergman case, supra, to hold that the carrier "must go through the full rejection routine regarding full PIP coverage, full uninsured motorist coverage or any other requirements which the statutes compel when the policy is first written." (Id. at 495)
There is no policy reason to justify a "windfall" recovery of insurance benefits not ordered, not paid for, and not desired until after an accident occurs, where the insurance company has complied with all requirements of the law imposed upon it when the policy was issued, and there has been no change in the law, in the interim, requiring any further compliance. The facts strongly indicate that the trial judge's adjudication of the respective rights and obligations of the parties was correct since, as the trial court pointed out in the judgment appealed, the insured subsequent to the accident renewed his policy and again rejected the additional UM coverage.
Accordingly, the declaratory judgment appealed is AFFIRMED.
SHIVERS, J., concurs.
ERVIN, J., specially concurs with opinion.
ERVIN, Judge, specially concurring.
Although I agree with my colleagues in affirming the declaratory judgment, I cannot agree with the majority that United States Fire Insurance Company v. Van Iderstyne, 347 So.2d 672 (Fla. 4th DCA 1977), does not require the insurer to inform the insured when a new vehicle is sought to be added to the policy by endorsement, after the insured has previously rejected extra coverage as to the policy itself, since it is my view that Van Iderstyne holds that the addition of another vehicle by endorsement must be considered a new insurance policy, mandating an informed rejection by the insured of uninsured or underinsured motorist coverage up to the limits of the insured's bodily injury liability limits. Van Iderstyne clearly states that an endorsement to an existing policy, requiring "additional coverage for [an] added car with the concomitant additional premium constituted a severable and separate contract ...", and as such it had to meet the provisions of Section 627.727(1). 347 So.2d at 673 (e.s.). The majority however views Van Iderstyne as inapplicable to the facts before us because here  unlike the circumstances in Van Iderstyne  there was no amendment to the statute changing the rights and obligations of the parties by providing underinsured motorist coverage between the time of the issuance of the policy and the endorsement adding the vehicle. This construction is, I suggest, neither consistent with Van Iderstyne, nor with a later opinion of the Fourth District. See United States Fidelity and Guaranty Company v. Waln, 395 So.2d 1211 (Fla. 4th DCA 1981).
There are significant differences for insurance purposes between a vehicle added to an existing policy and a substituted or replaced vehicle. Admittedly the "replacement" and "fleet provisions" share the common feature which is "to provide coverage, under specified conditions, for vehicles not described in the policy without the necessity of first securing the insurer's approval of the change or addition", 7 Am.Jur.2d, Automobile Insurance, § 225 (1980), and admittedly both provisions are often included in an "automatic insurance" clause. On the other hand, the "`replacement' provision *1056 deals with automobiles acquired to replace those described in the policy, and the `blanket' or `fleet' provision deals with those added to those already insured vehicles." Id. (e.s.) This distinction is crucial to the legislative requirement that the insurer obtain a rejection of UM coverage. If a vehicle is replaced in a policy, the premium structure and the risk allocation factors theoretically remain constant. Yet, to the contrary, the addition of a vehicle to a fleet policy will expose the insured to a risk quantitatively different from the mere substitution of one vehicle for another. It is this increased risk to which Section 627.727(1) is addressed, requiring a knowing rejection of UM coverage as to limits less than those afforded for BI coverage.
Nevertheless, the primary difficulty I have with the appellant's position is that I believe a fair interpretation of both the insurance agent's testimony and that of the named insured was that Peavy, the named insured, intended for the same limits of UM coverage which had been placed on vehicles under the fleet policy effective February 1, 1978 to apply also to the vehicle involved in the accident, which was later added to the policy. Peavy testified that he would at any event have obtained the same UM coverage on the added vehicle as had been afforded to him for the vehicles listed in the policy at the inception of the policy year. He stated that the vehicle had been used exclusively for commercial purposes, and apparently considered that the workers' compensation insurance he had procured for his employees, together with the $10,000/$20,000 limits of uninsured motorist coverage, would be adequate for his employees' needs insofar as any accidents which might occur to them within the scope of their employment. There was no testimony showing that the vehicle involved in the accident, a pick-up truck, would have been used by any family members, who were not employees, thus requiring additional UM coverage for them as class one insureds. Cf. Mullis v. State Farm Automobile Ins. Co., 252 So.2d 229 (Fla. 1971).
I agree also with the majority that Peavy's intent as to the amount of UM coverage he desired can be gleaned from the fact that he purchased the same limits of UM insurance the next succeeding policy year following the accident as he had the preceding year. Under the circumstances, I would conclude that even though Peavy was not given the opportunity at the time the vehicle was added to the policy to request UM coverage in the same amount as was available to him under his policy for BI liability, he nevertheless later knowingly rejected his right to claim any greater amount, and that rejection may, consistently with Section 627.727, be applied retroactively to the time the vehicle was added to the policy, thereby causing any additional insured to be bound by it.
Maxwell, however, relies upon the omnibus clause, typical in most automobile insurance policies, as giving him, a permissive operator of the vehicle, the status of an additional insured, and as such, upon the happening of an accident, affording him the same rights under the policy as the named insured. See 7 Am.Jur.2d, Automobile Insurance, § 249 (1980). Nevertheless, the rights of the additional insured can be no greater than those of the named insured, and once the latter knowingly rejects such coverage, the former is considered bound by that action. This conclusion is made evident by a recent decision of the Arizona Supreme Court which had before it the issue of whether an injured employee would be entitled, as an additional insured under the omnibus clause of his employer's automobile insurance policy, to be afforded also the right to reject UM coverage, notwithstanding his employer's decision not to accept it. Shaffer v. Southern Union Cas. Co., Inc., 112 Ariz. 145, 539 P.2d 902 (1975). In disapproving the employee's contention, the court noted that the 1965 Arizona statute  as does Florida's  permits only the named insured to reject UM coverage. The court concluded that it did not believe that the legislature intended "to give an additional insured the right to accept or reject uninsured motorist coverage when he did not pay the premium or contract for the coverage." 539 P.2d at 903.
Florida cases, in construing Section 627.727, have uniformly held that if the named insured rejects UM coverage at the inception *1057 of the policy period, the additional insured must be considered bound by such rejection. Kohly v. Royal Indemnity Co., 190 So.2d 819 (Fla. 3d DCA 1966), cert. den., 200 So.2d 813 (Fla. 1967); Continental Ins. Co. v. Roth, 388 So.2d 617 (Fla. 3d DCA 1980); Morpurgo v. Greyhound Rent-A-Car, Inc., 339 So.2d 718 (Fla. 1st DCA 1976); Mattingly v. Liberty Mut. Ins. Co., 363 So.2d 147 (Fla. 4th DCA 1978). In Mattingly, the Fourth District Court of Appeal specifically stated that the lessee of an automobile was afforded UM coverage in such amounts selected by the lessor, "which, as the named insured, was the only party privileged to select coverage in a lesser amount." 363 So.2d at 149.
Because of the circumstances peculiar to this case, I would hold that the named insured's later explicit rejection of additional UM coverage of a vehicle added to the policy may be retroactively applied to the date the vehicle was added,[1] thereby binding Maxwell, the additional insured, to the limits of UM insurance actually available under the policy.
NOTES
[1] I am not unaware of the holding that a named insured's rejection of UM coverage, made after the issuance of the policy and following an accident, cannot be applied ab initio to the inception of the policy date. Manchester Insurance & Indemnity Company v. Jones, 317 So.2d 786 (Fla. 3d DCA 1975). The Manchester decision is distinguishable, however, from the instant case in several respects. First, the named insured was the party who sought UM coverage, not, as here, the additional insured. Second, the named insured repudiated his earlier rejection of UM coverage, contending he was unaware of the consequences of his actions. Manchester stated that there was conflicting evidence before the jury, thereby permitting a determination as to whether the insured had knowingly rejected such coverage.