668 So.2d 631 (1996)
GOVERNMENT EMPLOYEES INSURANCE CO., Appellant/Cross-Appellee,
v.
Arlene STAFSTROM and Terry Stafstrom, Appellee/Cross-Appellants.
No. 94-794.
District Court of Appeal of Florida, Fifth District.
January 19, 1996.
Rehearing Denied February 28, 1996.
*632 David B. Falstad of Gurney & Handley, P.A., Orlando, for Appellant/Cross-Appellee.
Harlan L. Paul of James Zimmerman & Paul, DeLand, for Appellees/Cross-Appellants.

ON MOTION FOR REHEARING
HARRIS, Judge.
We reconsider this case en banc and withdraw our prior opinion dated October 13, 1995.
When Terry Stafstrom initially obtained his liability insurance policy in the amount of $100,000 (the policy involved in this action), he elected to cap his uninsured motorist coverage at $10,000. Two vehicles were covered under this original policy. Subsequently, he added an additional vehicle to his original policy. No other changes were made.
When Arlene Stafstrom, Terry's wife, was subsequently injured in an accident, he asserted that he was entitled to $100,000 in uninsured motorist coverage on the newly added vehicle because he had not specifically rejected such coverage. The trial court agreed. The issue before us, then, is whether the addition of the new vehicle to the existing policy placed an obligation on the insurance carrier to again obtain an express rejection of the uninsured motorist coverage equal to the liability limits. Based on current Florida law, we hold that it does not.
In Sentry Insurance A Mutual Company v. McGowan, 425 So.2d 98 (Fla. 5th DCA 1982), this court faced the same issue it does today and held:
We hold that the addition of a new vehicle to an existing policy does not constitute a variation in the terms of the policy material enough to require a new rejection of uninsured motorist coverage each time an additional vehicle is added.[1]
The Stafstroms, however, urge that the Florida Supreme Court overruled Sentry, at least by implication, in Fireman's Fund Insurance Company v. Pohlman, 485 So.2d 418 (Fla.1986).
We reject this argument for two reasons. First, the issue before the Pohlman court was not whether the addition of a new vehicle to an existing policy would require an express rejection of UM coverage at liability limits, thereby overruling the various decisions, including Sentry, interpreting section 627.727 as imposing no such requirement. Rather, the question addressed in Pohlman was whether the addition of a new vehicle and the payment of an additional premium would constitute a "new contract" on that vehicle, thus rendering applicable an intervening statute which provided for the inclusion of a stacking provision in that portion of the contract that related to the added vehicle.
In answering this question, the Pohlman court held that a new contract on the added vehicle was created so that the provisions of section 627.4132, adopted between the issuance of the original policy and the addition of the new vehicle, would govern the "new contract." However, section 627.4132, unlike section 627.727, did not have a provision limiting its applicability to future contracts. The Pohlman court probably would have reached a different conclusion had section 627.4132 provided:
This provision shall not apply to any policy issued hereafter which is an extension, modification or change to a preexisting policy with the same bodily injury liability limits. *633 While the Pohlman court held that a new contract was created, it did not hold that the original contract was not extended or changed by the addition of a vehicle. Therefore, the section 627.727 waiver of the requirement to again obtain the rejection of increased uninsured motorist coverage remains applicable.
We believe that the addition of a new vehicle to an existing policy can constitute both a "new policy" as to the added vehicle sufficient to incorporate intervening statutory changes and, at the same time, constitute an extension or change to the existing policy so that the terms of section 627.727 remain in force.
Moreover, the Pohlman court acknowledged the continuing validity of Sentry when, instead of overruling Sentry, it distinguished that case as involving an entirely different issue from that then being considered in Pohlman.
Because the supreme court did not overrule Sentry when it had the opportunity, we should not presume to do so for them. Hoffman v. Jones, 280 So.2d 431 (Fla.1973).

REVERSED and REMANDED for further action consistent with this opinion.
PETERSON, C.J., and DAUKSCH, COBB, GOSHORN, GRIFFIN, THOMPSON and ANTOON, JJ., concur.
SHARP, W., J., dissents with opinion.
SHARP, W., Judge, dissenting.
It is not clear to me whether the Florida Supreme Court would choose to follow Fireman's Fund Insurance Company v. Pohlman, 485 So.2d 418 (Fla.1986) or let stand this court's decision in State Farm Mutual Automobile Insurance Co. v. Bergman, 387 So.2d 494 (Fla. 5th DCA 1980) in this context. To do so requires the conclusion that one has a new insurance contract for the purpose of applying a new statute, if an insured insures a new additional vehicle under a pre-existing policy and pays a new premium, but under those same circumstances one does not have a new insurance contract requiring a new rejection of uninsured motorist coverage pursuant to section 627.727(1), Florida Statutes (1987). I would opt to uphold the trial judge in his conclusion that a rejection was required, thereby erring on the side of coverage, and let the Florida Supreme Court address this issue either as a conflict case,[1] or a case involving a question of great public importance.[2]
The record discloses that in 1985, Terry Stafstrom executed a form which authorized uninsured motorist benefits in a sum less than the $100,000.00 coverage for bodily injury liability provided by a policy issued by GEICO. The uninsured motorist coverage was set at $10,000.00. At that time the policy insured both Terry and Arlene Stafstrom (Terry's wife), who were the owners of two vehicles, both of which were insured under the policy. In 1988, they purchased a 1985 Mercury, which they added to their policy, in addition to the other two vehicles initially covered. They paid an additional premium for insuring this third vehicle. At that time, GEICO did not offer the Stafstroms an opportunity to select or reject uninsured motorist coverage at the bodily injury level.
Shortly after the new vehicle was added to the policy, Arlene was seriously injured in a head-on collision. Her damages exceeded $120,000.00. The Stafstroms filed a claim under the uninsured motorist provision of their policy because the other driver and vehicle were not insured. GEICO agreed the Stafstroms could stack their policy coverage for a total of $30,000.00, or $10,000.00 per vehicle. The Stafstroms argued that the newly added vehicle was not controlled by the waiver, and that they were entitled to $100,000.00 for the added vehicle, and $10,000.00 for each of the other two vehicles, for a total of $120,000.00 in coverage. The trial judge agreed with the Stafstroms.
By statute, Florida has long required an insurance company to issue automobile insurance policies with uninsured motorist coverage in the same amount as the bodily injury liability coverage, unless rejected by the insured *634 in writing when the policy is issued. In 1985 the statute provided that when an insured rejects coverage at that level, an additional rejection or waiver of coverage need not be obtained from the insured, and the higher coverage need not be provided in the following circumstances:
When the named insured or lessee has initially selected limits of uninsured motorist coverage lower than his bodily injury liability limits, higher limits of uninsured motorist coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits unless the named insured requests higher uninsured motorist coverage in writing.
§ 627.727(1), Fla.Stat. (1987).
The question of whether written rejection of coverage must be obtained under this statute was twice addressed by this court. In State Farm Mutual Automobile Insurance Co. v. Bergman, 387 So.2d 494 (Fla. 5th DCA 1980), approved, 408 So.2d 1043 (Fla. 1982), we held that the 1979 version of section 627.727(1), which made rejection of coverage unnecessary for "renewal policies," encompassed the situation where an insured exchanged a replacement vehicle for the one insured under the policy. In Bergman there was no evidence of any additional premium having been paid for greater uninsured motorist coverage.
In Sentry Insurance A Mutual Co. v. McGowan, 425 So.2d 98 (Fla. 5th DCA 1982), rev. denied, 434 So.2d 888 (Fla.1983), we held that an additional rejection of coverage need not be made in a case where the insured (as here) added an additional vehicle to a previously issued policy which covered other vehicles owned by the insured. Later a travel trailer was added and the insured obtained additional collision and comprehensive coverage on the trailer. Writing for the court, Judge Cowart stated that a new rejection of coverage is required only if a "new" insurance contract is entered into by the parties. Relying on Maxwell v. United States Fidelity and Guaranty Co., 399 So.2d 1051 (Fla. 1st DCA 1981), which involved a fleet policy, Judge Cowart concluded that the addition of a new vehicle to the policy neither created a new policy, nor constituted a variation in the terms of the policy material enough to require a new rejection of uninsured motorist coverage.
In American Fire and Indemnity Co. v. Spaulding, 442 So.2d 206 (Fla.1983), the Florida Supreme Court appeared to approve this court's resolution of the rejection vel non issue in Sentry. In Spaulding, the insured initially rejected the uninsured motorist coverage in the same amount as the liability coverage. Later an additional person was added as an insured, and still later, an additional vehicle. The court held that no new rejection was required. It relied on the 1979 language of the statute which excluded renewal policies. It noted that the statute had been changed to cover extensions, changes, superseding policies, and replacement policies as well as renewals. It commented that the new statute would make some courts' analysis of this issue, which turned on whether or not the policy changes were material, obsolete.
Until the Florida Supreme Court's decision in Fireman's Fund Insurance Company v. Pohlman, 485 So.2d 418 (Fla.1986), the outcome in this case would have been clear and in GEICO's favor. However it appears to me that the Pohlman decision probably changes that result. In Pohlman, the issue was whether the anti-stacking statute should be applied to a policy which had been issued before the statute became effective.
Pohlman obtained his insurance policy prior to the 1980 effective date of the statute, which barred anti-stacking restrictions in insurance policies. In 1981, he added a vehicle to his policy by endorsement and was charged an additional premium. He was injured while riding a motorcycle, and sought to stack coverage on all vehicles under the policy. The court concluded that if the endorsement constituted a new policy, the new stacking statute would apply to it. Citing United States Fire Insurance Co. v. Van Iderstyne, 347 So.2d 672 (Fla 4th DCA 1977), the court held:
[t]he addition of an automobile to an existing policy of insurance along with an additional *635 premium constitutes a separate and severable contract of insurance.
Pohlman at 420. It expressly distinguished Sentry and Maxwell and said they were "not controlling." Id.
The Pohlman analysis of whether this is a new policy appears to have replaced the material change analysis. The court in Pohlman stated it was possible that an endorsement which either adds a premium, or adds both a premium and a vehicle to a policy, may constitute the issuance of a new policy incorporating a statutory amendment to its terms. In this case there was a new additional vehicle and an additional premium. No incorporation of a new statute is involved in the present case. However, the Pohlman analysis points to the conclusion that a new policy of insurance was created when the Stafstroms added their third vehicle and paid an additional premium for the risk of insuring this third vehicle. The Pohlman Court stated:
A court must examine the risk covered by the additional premium. In this instance, the fact that the increased premium is covering the risk involved with insuring an additional vehicle leads to the conclusion that a separate and severable contract was entered into on the date of the endorsement.
Pohlman at 421.
If a new insurance contract was formed when the Stafstroms added the third vehicle and paid the additional premium, the duty imposed by section 627.727 on GEICO to obtain a written rejection of uninsured motorist benefits at the same level as the bodily injury liability arose as to the newly added vehicle. Failure to obtain the written rejection means that the new policy issued by GEICO on the third vehicle has $100,000.00 uninsured motorist coverage available for the Stafstroms. Coverage on the other two vehicles is limited to $10,000.00 per vehicle. In my view, the Stafstroms are therefore entitled to a total of $120,000.00 in uninsured motorist coverage.
NOTES
[1] This holding was based on the then applicable section 627.727 which provided "unless the named insured ... requests such coverage in writing, the coverage need not be provided in or supplemental to a renewal policy when the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer." The legislature later amended 627.727 to make our interpretation even more compelling by providing:

When the named insured ... has initially selected limits of uninsured motorist coverage lower than his bodily injury limits, higher limits of uninsured motorist coverage need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes or replaces an existing policy.
This was the provision in effect at the time of the accident in our case.
[1] Fla.R.App.P. 9.030(2)(A)(iv).
[2] Fla.R.App.P. 9.030(2)(A)(v).