MONACO, J.
Allstate Insurance Company (“Allstate”), appeals the granting of a final summary judgment in favor of the appel-lees, Georgia Durham and Darrell J. Durham (the “Durhams”), determining that the appellees were entitled to uninsured motorist coverage. Under the peculiar facts of this case, we hold that the Durhams had rejected such coverage and that the judgment should, therefore, be reversed.
According to a “Joint Stipulation of Facts” filed by the parties, Allstate first issued a policy of automobile insurance to the Durhams in 1988. The original policy period was for six months, and the policy had been continuously renewed every six months since. The policy initially contained provisions for uninsured motorist coverage. In 1991, however, the Durhams expressly rejected this coverage in writing. Twice each year thereafter Allstate provided the notice required by section 627.727(1), Florida Statutes.
By 1997, the Durhams owned four vehicles that were insured through their Allstate policy. In September of 1997, the Durhams acquired a fifth vehicle and sought to insure it with Allstate. Allstate required that this fifth vehicle be placed on a separate policy bearing a separate policy number and declaration page. Allstate refers to this as a “multiple record policy.” Neither the declaration page for the four-vehicle policy, nor that for the fifth vehicle’s policy show that uninsured motorist coverage was elected. It is undisputed that the Durhams were not charged for such coverage under either policy. It is likewise undisputed that the Durhams never rejected uninsured motorist coverage in writing in accordance with section 627.727(1), Florida Statutes (1999), with respect to the policy covering the fifth vehicle.
Although it is rather difficult to fathom in this technologically sophisticated age, Allstate’s internal computer software apparently only allowed four vehicles per declaration page or policy. The second policy, however, reflected that the Durhams were given the benefit of a multiple car discount, and that there were identical policy limits on all five vehicles. The renewal date on the second policy was changed early on so that both policies would renew at the same time and they were both billed simultaneously on the same statement. The parties stipulated, in *1256 fact, that the Durhams had been frequently notified by Allstate that the insurer considered all five vehicles to be covered by a single policy. A letter was sent by Allstate to the Durhams specifically advising that because they owned more than four vehicles,
[Y]ou have two sets of policy declarations with two policy numbers. In effect, you have one policy with two policy numbers.
Historically when the Durhams sold a covered vehicle, the vehicle insured by the separate policy would be moved to the four-car policy if a replacement vehicle was not insured by the Durhams within a short specified time. These changes were made by endorsement and no new applications were required or taken by Allstate.
In 1999, Mrs. Durham was involved in an automobile accident with an uninsured motorist while she was driving one of the vehicles named in the four-vehicle policy. Allstate denied UM coverage because of the 1991 rejection of such coverage under the original policy. The Durhams brought suit against Allstate, positing that since there was no written rejection of UM coverage for the policy covering the fifth vehicle, they were entitled to such coverage by virtue of the mandatory language of section 627.727(1), Florida Statutes.
Based on the stipulated facts the trial court granted summary judgment in favor of the Durhams. The court held that the second policy was a separate policy requiring a second specific written rejection of UM coverage by the appellees. We find that we cannot agree with this conclusion.
The uninsured and underinsured vehicle coverage statute, section 627.727, Florida Statutes, provides that no motor vehicle liability insurance policy providing bodily injury liability coverage with respect to a vehicle registered or principally garaged in Florida shall be issued unless it provides uninsured motor vehicle coverage. UM coverage may, however, be rejected by the insured. The statute states in pertinent part that:
[T]he coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all Durhams under the policy.
The statute requires the carrier to notify the named insured at least annually by a form attached to the premium notice of the option to have UM coverage. Simple receipt of the notice is not an affirmative rejection of UM coverage.
Importantly for the present case, the statute also states that:
Unless an insured, or lessee having the privilege of rejecting uninsured motorist coverage requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury limits when an insured or lessee had rejected the coverage.
§ 627.727, Fla. Stat. (1999) (emphasis added).
The issue for our determination, therefore, is whether the policy insuring the fifth vehicle was a separate policy requiring a separate written rejection of UM coverage, or whether it was simply part of the four-vehicle policy under which UM coverage had previously been rejected.
In Government Employees Ins. Co. v. Stafstrom, 668 So.2d 631 (Fla. 5th DCA 1996), this court held that because of the statutory language cited above, the addition of a new vehicle to an existing policy *1257 was an extension or change in the policy, which did not require the carrier to again obtain an express rejection of UM coverage. See also Sentry Ins. v. McGowan, 425 So.2d 98 (Fla. 5th DCA 1982), rev. denied, 434 So.2d 888 (Fla.1983). Other Florida courts considering similar issues have come to the same conclusion. See Nationwide Mut. Fire Ins. Co. v. Hild, 818 So.2d 714 (Fla. 2d DCA 2002); Gasch v. Harris, 808 So.2d 1260 (Fla. 4th DCA 2002).
Logically, the second policy covering the fifth vehicle could only have been either part of the four-vehicle policy, or an “other policy which ... extends [or] changes an existing policy.” In either instance, the result is the same. Allstate regularly notified the Durhams that the two policies were actually one policy and the Durhams received numerous statutory notifications with their premium notices that UM coverage was not being provided. A multi-car discount was given with respect to the second policy that would not have been available if there were two separate policies. Both policies were billed on a single invoice and a premium for uninsured motorist coverage was never billed or collected. Both policies had the same liability limits and vehicles would be moved from the second policy to the first if a vehicle named in the first policy was sold.
The only other case located which has considered Allstate’s peculiar four-vehicle policy limit likewise viewed the second declaration sheet to be part of a single policy covering five vehicles. See Allstate Ins. Co. v. Ashley, 833 F.Supp. 583, 586 (S.D.W.Va.1993). The court, there, pointed out that because the insureds had taken advantage of a multi-car discount by taking out one policy, rather than two, they should not receive more than they bargained for “because of the vagaries of Allstate’s computer software program-.” Id.
Under the facts of this case we conclude that there was only one policy of insurance and a second UM rejection was not required.
REVERSED and REMANDED.
SAWAYA and PLEUS, JJ., concur.