2004 OK CIV APP 82

**Leslie DODD, Plaintiff/Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant/Appellee.**

**No. 99,726.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 2, 2004.

James A. Scimeca, Miller Dollarhide, Oklahoma City, OK, for Plaintiff/Appellant.

George D. Davis, Randon J. Grau, McKinney & Stringer, P.C., Oklahoma City, OK, for Defendant/Appellee.

BUETTNER, Presiding Judge.

¶ 1 Plaintiff/Appellant Leslie Dodd appeals from the trial court's denial of her quest for additional uninsured motorist (UM) benefits from Defendant/Appellee Allstate Insurance Company (Allstate). Allstate paid $20,000, asserting that was the policy limit. Dodd argued she was entitled to another $10,000 by operation of law. The matter was tried to the court on stipulations of fact and the trial court found Allstate owed nothing more on the policy. Because the trial court correctly found Dodd was not entitled to additional UM coverage, we affirm.

¶ 2 In her Petition, Dodd alleged that Allstate issued two auto insurance policies to her: 1) a policy insuring three vehicles with UM coverage of $10,000 per person and $20,000 per accident, and 2) a policy insuring one vehicle, which "does not charge any premium for (UM) coverage, even though said coverage was requested by plaintiff . . . . defendant has failed to provide plaintiff with evidence of a written rejection of (UM) coverage as required by 36 O.S. § 3636 in connection with this second policy." Dodd alleged that in July 1997 she was injured by the negligence of an uninsured motorist and that the cost of her injuries exceeded the value of available liability and UM coverage. Dodd averred that Allstate had allowed her to stack the policy limits based on two UM premiums paid under the first policy, but that Allstate had refused to pay any UM benefits under the second policy and that as a result Dodd was owed $10,000, representing the amount of UM coverage Dodd averred she had by operation of law under the second policy.

¶ 3 Allstate answered that Dodd in fact had one policy, but that because she had more than four cars insured, at the time the policy issued, Allstate issued an "overflow" policy for the fifth car. Allstate argued it had no duty to stack the UM coverage on the overflow policy for which no premium was charged.

¶ 4 The parties filed a joint stipulation of facts June 20, 2003. The parties agreed that Allstate had insured Dodd since 1986 and that Dodd and her husband added and deleted many vehicles from coverage during that time. Allstate's computer system allows identification of only four vehicles on one declarations page, and that if an insured has more than four vehicles covered, Allstate issues a separate declarations page and a separate policy number. The policy Dodd held with Allstate required an additional declarations page to accommodate the number of vehicles insured. Allstate issued Dodd policy number 010173781 ("policy 781") and policy number 031509180 ("policy 180"). Dodd was injured by an uninsured motorist while she was driving the 1991 Chevy Astro Van, listed on the declarations page of policy 781. The uninsured motorist, who injured Dodd, had $10,000 liability coverage. At the time of the accident, the declarations page of policy 781 listed three cars and included bodily injury limits of $10,000/$20,000, a multiple car premium discount, and a multiple car UM premium which was equivalent to two UM premiums.

¶ 5 The stipulation of facts further stated that at the time of the accident, the declarations page of policy 180 listed one vehicle, a 1988 Jeep. The declarations page included bodily injury liability limits of $10,000/$20,000 and stated that a multiple car discount applied. The declarations page for policy 180 stated that the UM premium for policy 180 was charged on policy 781. Allstate paid UM benefits to Dodd under policy 781 and allowed her to stack coverage based on payment of two premiums. Allstate therefore paid Dodd $20,000. Allstate paid no UM benefits under policy 180. The policy lan-

guage limited stacking. Dodd's claim exceeded $40,000.

¶ 6 In her trial brief, Dodd argued that she had two separate auto insurance policies with Allstate. She argued that Allstate failed to obtain the statutorily-required rejection of UM coverage from her for policy 180 and that Allstate therefore must pay her UM benefits of $10,000 on policy 180.

¶ 7 In response, Allstate argued that Dodd had but one policy. However, it argued that even if she were found to have two separate policies, UM benefits could not be stacked without her having paid a premium for UM coverage on policy 180. Allstate quoted the Oklahoma Supreme Court's holding "(i)t is well settled in Oklahoma that insureds may stack their UM coverage for additional vehicles under a policy if they have paid separate UM premiums for each vehicle, or if they have separate policies and pay UM premiums for each policy," citing *Wilson v. Allstate Ins. Co.*, 1996 OK 22, 912 P.2d 345, 347.[1] Allstate quoted *Wilson* further for the explanation that stacking of UM benefits has been allowed based on the number and amount of UM premiums paid, as that reflects the reasonable expectations of the contracting parties. Allstate argued that because Dodd's insurance policy provided UM coverage to her, there was no requirement that it obtain a written rejection of UM coverage. Allstate noted that the policy 180 declarations page indicated that the UM premium was charged on policy 781. Allstate argued that this showed that Dodd had UM coverage for all of her vehicles, including the vehicle listed in policy 180. Allstate argued that there could be no additional benefit paid, though, where it had paid a UM benefit of $10,000 for each of the two UM premiums paid by Dodd. Allstate further relied on two cases from other jurisdictions which held that its policy of listing more than four cars on a separate declarations page with a separate policy number did not result in two separate policies requiring two separate written rejections of UM coverage.[2]

¶ 8 Dodd replied that insurance policies are given a liberal construction in favor of coverage. Dodd argued that policy 180 and policy 781 were separate policies because each included the statement "(t)his policy covers only the vehicles shown on this Automobile Insurance Policy Declarations. Please refer to your additional Allstate policy(ies) for other vehicles you have insured with Allstate." Dodd also contended that the existence of a multiple car discount did not preclude a finding of separate policies covering multiple cars. Dodd asserted that policy 180 and policy 781 contained different endorsements and listed different drivers, arguing that this also required finding the two were separate and distinct policies, so that a written rejection of UM coverage was required for policy 180. Dodd asserted also that neither of the policies included the language that policy 180 was an overflow policy, multiple record policy, rollover policy, or extension policy. Dodd did not address the provision in policy 180 showing UM coverage and showing that the UM premium was paid under policy 781.

¶ 9 In its Order and Opinion, the trial court found that the facts were not in dispute. The trial court found that the facts of this case are "almost identical" to *Durham, supra,* and governed by the legal principles in *Wilson, supra.* The court explained its decision:

> This is a case where regardless of whether or not there were two separate policies, plaintiff only paid UM premiums that would require payment stacking UM benefits in the total amount of $20,000. I find that plaintiff is not entitled to any further UM benefits as policy No. 180, even though arguably a separate document, was only necessary, as in the Florida case, due to computer limitations. The record is clear that the coverage was provided, that a separate UM written rejection was not necessary, that premiums were paid for two benefits which were provided by Allstate. Therefore, to the extent that multiple premiums were charged, stackable cov-

---

**1.** Quoting *Withrow v. Pickard,* 1995 OK 120, 905 P.2d 800, which is discussed below.

**2.** See *Allstate Ins. Co. v. Durham,* 838 So.2d 1254, 1256 (Fla.App.2003); *Allstate v. Ashley,* 833 F.Supp. 583 (S.D.W.Va.1993).

erage was paid for the vehicles charged UM premiums.

The trial court entered judgment in favor of Allstate.

■ ¶10 On appeal, Dodd again argues that she is entitled to an additional $10,000 UM benefit under policy 180. We agree with the trial court that it is not determinative whether Dodd had one policy or two. Dodd is not entitled to more than $20,000 in UM coverage under the facts of this case. Dodd stipulated that Allstate's computer system requires that when more than four vehicles are insured, an additional declarations page, with an additional policy number, is issued. Dodd further stipulated that she had more than four vehicles insured with Allstate at the time the policy 180 declarations page

issued. Both declarations pages included the multiple car discount. Because policy 180 listed only one vehicle, necessarily the multiple car discount must refer to the other cars listed in policy 781. And, policy 180 includes the statement that UM coverage is included but that the premium was paid under policy 781.[3] Because the plain language of the policy 180 declarations page shows that Dodd had UM coverage under its terms, we are unable to find that Allstate failed to require a written rejection of UM coverage from Dodd on policy 180, and consequently we do not find Allstate is liable for the statutory minimum $10,000 UM coverage under policy 180.[4]

¶11 We agree with Allstate that the facts of this state are similar to those of *Durham, supra*[5] and *Ashley, supra*.[6] However, we

3. Specifically, the declarations page for policy 180 includes the heading "Additional Coverage" and below that it states "The following policy coverage is also provided: uninsured motorist insurance." This part of the declarations page also shows the UM coverage limits and in the space provided for the premium it states "charged on policy . . . 781."

4. *Beauchamp v. Southwestern Nat'l Ins. Co.*, 1987 OK 111, 746 P.2d 673 held that an insurer's failure to offer UM coverage with a new policy, along with the failure to obtain a written rejection of UM coverage, results in the inclusion of UM coverage in the policy by operation of law.

The Oklahoma UM statute, 36 O.S.1991 § 3636, provides, in part:

A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.

B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured. The uninsured motorist

coverage shall be upon a form approved by the Insurance Commissioner as otherwise provided in the Insurance Code and may provide that the parties to the contract shall, upon demand of either, submit their differences to arbitration; provided, that if agreement by arbitration is not reached within three (3) months from date of demand, the insured may sue the tort-feasor (sic).

\* \* \*

F. A named insured or applicant shall have the right to reject uninsured motorist coverage in writing, and except that unless a named insured or applicant requests such coverage in writing, such coverage need not be provided in or supplemental to any renewal, reinstatement, substitute, amended or replacement policy where a named insured or applicant had rejected the coverage in connection with a policy previously issued to him by the same insurer.

\* \* \*

5. In *Durham*, the insureds initially had UM coverage, but at a later policy renewal, they rejected UM coverage in writing. After a few years of renewals, they added a fifth car to their policy and due to its computer system limitations, Allstate placed the fifth car on a separate declarations page with a separate policy number. Allstate did not obtain a written rejection of UM coverage for the additional, fifth vehicle. The insureds also did not pay a UM premium for any of the vehicles in their policy. One of the insureds was injured by an uninsured motorist while driving one of the cars listed on the original policy declarations page. Allstate denied UM coverage based on the insureds' earlier written rejection of UM coverage. The insureds argued that they were entitled to UM coverage by operation of law because of the failure to obtain a written rejection of UM at the time the fifth car was added. The court noted the Florida statute

find the trial court reached the proper result under Oklahoma authority as well. The Oklahoma Supreme Court's opinion in *Withrow v. Pickard*, 1995 OK 120, 905 P.2d 800 is instructive here. In *Withrow*, the plaintiff insured two cars in one policy with bodily injury limits of $25,000/$50,000. The plaintiff requested UM coverage in the same amount and paid one premium for UM and signed a form acknowledging that only one UM policy limit would be paid for any claim. The plaintiff replaced those two cars and kept the same amount of coverage. Three years after the initial policy, the plaintiff sought to add a third car to his policy. The form adding the third car indicated that the policy did not allow stacking of UM benefits. For the third car, the plaintiff again selected UM coverage equal to the bodily injury limits. The insurer never charged more than one UM premium, and the premium amount was not based on the number of vehicles covered by the policy. While the policy was in effect, the plaintiff's wife was killed by an uninsured motorist. The insurer paid the $25,000 UM policy limit. The plaintiff filed suit, seeking stacked UM coverage on his three cars, for a total benefit of $75,000. The plaintiff argued that when he added the third vehicle to his policy, a new policy was created and at that time the insurer was required to offer him stackable UM coverage and that without a written rejection of stackable UM coverage, such coverage applied by operation of law. The trial court agreed with the plaintiff, but the Oklahoma Court of Appeals reversed. *Id.* at 802–803.

¶ 12 On certiorari in *Withrow*, the Oklahoma Supreme Court explained that the addition of a vehicle to an existing policy constitutes a new policy distinct from the original and as a result, § 3636 requires that UM coverage be offered for the new vehicle. *Id.* at 803. The court noted that Oklahoma law does not require an insurer to offer stackable coverage when a new vehicle is added to an existing policy. *Id.* The court held that the insurer did all that was required by law when it offered UM coverage on the third car when it was added to the policy. *Id.* The court recognized that in Oklahoma, insureds may stack their UM coverage for the additional

which provided that a new rejection of UM coverage is not required where a policy change simply "renews, extends, changes, supersedes, or replaces an existing policy" where the insured has previously rejected UM coverage. 838 So.2d at 1256. The court concluded that the addition of the fifth car, while on a separate declarations page and with a separate policy number, was in fact part of the original policy so that under the statute, a second UM rejection was not required. *Id.* at 1257.

Allstate relies on *Durham* for its holding that the fifth vehicle added to a separate declarations page remains part of the single policy. *Durham* does in fact so hold, based in part on the multiple car discount (which the *Durham* court stated could not be offered with dual policies), which also exists in this case, and also based on frequent notices to the insured that they had only one policy—a fact not included in the record in this case. *Durham* is easily distinguishable, nevertheless. In this case, the second declarations page does in fact show that UM coverage is included. And, Oklahoma law makes clear that the addition of a car (as opposed to replacement of an existing car) to a policy requires a new offer and written rejection of UM coverage. For these reasons, we are unpersuaded that *Durham* is helpful in this case for anything more than supporting a finding of one policy.

6. *Ashley* similarly involved Allstate auto insurance covering five vehicles—four on one declarations page and one on another declarations page with its own policy number. The insureds sought to stack the UM coverage on all five vehicles. Allstate countered that the policy precluded stacking, and that there was only one policy and therefore one benefit could be paid. The court noted that the plain language of the policy prohibited stacking. 833 F.Supp. at 585. The court also noted, however, that in West Virginia, anti-stacking policy language is void where two or more policies are involved. *Id.* at 586. The court therefore addressed whether the insureds had one policy or two in the case of two declarations pages and two policy numbers resulting from Allstate's computer system limitations. The court noted that all five cars had identical coverage amounts and both declarations pages listed the same effective dates. *Id.* The court also noted a multiple car discount applied to all five cars. *Id.* The court noted a West Virginia Supreme Court opinion which had held that in the case of a multiple car discount, "it is obvious that the insured appellee bargained for only one policy and only one underinsurance motorist coverage endorsement.... The insured was therefore receiving the benefit of that which he bargained for and should not receive more." *Id.* citing *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803, 807 (1992). The facts of *Ashley* are sufficiently similar to this case to support the result reached here.

vehicles under a policy only if they have paid separate UM premiums for each vehicle, or if they have separate policies and pay UM premiums for each policy. *Id.,* citing *Kinder v. Oklahoma Farmers Union Mut. Ins. Co.,* 1991 OK CIV APP 53, 813 P.2d 546, 548. The court concluded that the number of UM benefits an insured may rely on is determined by the number of premiums paid, so that if an insured pays multiple UM premiums, only then may the benefits be stacked. *Id.* at 803–804. The court noted insurance companies are not prohibited from charging multiple premiums in a single policy covering multiple vehicles, but nor are they compelled to offer stackable UM coverage in a single policy covering multiple vehicles. *Id.* The court lastly rejected the plaintiff's contention that because he was not offered stackable coverage when he added the third car to his policy, such coverage arose by operation of law. The court held that the plaintiff was offered UM coverage when he added the third car and that he was only entitled to one UM benefit because he paid one premium. *Id.*

¶ 13 In this case, policy 180 expressly provides for UM coverage in the same amount as the bodily injury limits. Policy 180 indicates that the premium for that coverage was paid under policy 781. The stipulated facts show that Dodd paid two UM premiums and was paid two UM benefits under the policies. There is no need to imply UM coverage by operation of law when it is expressly included in the policy. The stipulated facts show that Allstate offered UM coverage on all of Dodd's vehicles, Dodd elected to have UM coverage on all her vehicles and to pay two premiums, and therefore two benefits are all that was due.

AFFIRMED.

ADAMS, J., and JONES, J., concur.