818 So.2d 714 (2002)
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant,
v.
Scott Kenneth HILD and Charis Hild, his wife, Appellees.
No. 2D01-4686.
District Court of Appeal of Florida, Second District.
June 21, 2002.
*715 John D. Russell of Fowler White Boggs Banker, Tampa, and Charles W. Hall of Fowler White Boggs Banker, St. Petersburg, for Appellant.
David S. Becker of Heintz & Becker, Bradenton, for Appellees.
PARKER, Judge.
Nationwide Mutual Fire Insurance Company (Nationwide) challenges the trial court's order finding that Scott and Charis Hild (the Hilds) were entitled to stacked uninsured motorist (UM) coverage for injuries arising from an auto accident. Because the trial court's decision conflicts with the plain language of section 627.727(9), Florida Statutes (1997), we reverse.
The facts of this case are not in dispute. In 1992, Scott Hild obtained an auto insurance policy with Nationwide covering a 1989 Ford Mustang. At that time, Scott Hild elected to purchase nonstacked UM coverage in exchange for a reduced premium. Nationwide obtained a valid selection of nonstacked UM coverage from Scott Hild on a form approved by the Department of Insurance. Nationwide's rates for nonstacked UM coverage had been approved by the Department of Insurance.
In 1996, Scott Hild added his new wife and her Volvo to his existing policy with Nationwide. He requested the same coverages for the Volvo that he carried on the Mustang. Nationwide charged the Hilds an additional premium for the Volvo based on the same coverages that were on the Mustang. The Hilds did not request any change in their UM coverage at that time. Nationwide did not obtain a new UM selection form from the Hilds when the Volvo was added to the policy.
At each renewal, both before and after the Volvo was added to the policy, Nationwide sent written notice to the Hilds about the availability of both stacked and nonstacked UM coverage with the bill for their renewal premium pursuant to the requirements of section 627.727(1). This notice, which was approved by the Department of Insurance, specifically advised the Hilds of the availability of stacked UM coverage. Despite these notices, the Hilds never requested any additional information about stacked UM coverage from Nationwide and never requested any change in their UM coverage.
In 1998, Scott Hild was injured in an auto accident while driving the Mustang. The Hilds made a claim for UM benefits with Nationwide. Nationwide admitted coverage and tendered the $50,000 UM policy limits on the Mustang to the Hilds. The Hilds rejected the tender and brought this declaratory judgment action seeking a declaration that they were entitled to stack *716 their UM limits on the Mustang and the Volvo. The trial court held that the Hilds were entitled to do so because Nationwide had failed to obtain a new UM selection form when the Hilds added the Volvo to the policy. Thus, the sole question on appeal is whether Nationwide was required by section 627.727(9) to obtain a new UM selection form electing nonstacked UM coverage when the Hilds added the Volvo to their existing policy. Because the statutory language clearly shows that the answer to this question is no, the trial court's final judgment must be reversed.
In addressing the interpretation of a statute, this court must look first to the plain language of the statute. Hawkins v. Ford Motor Co., 748 So.2d 993, 997 (Fla.1999); Overstreet v. State, 629 So.2d 125, 126 (Fla.1993); St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla.1982). "While legislative intent controls construction of statutes in Florida, that intent is determined primarily from the language of the statute. The plain meaning of the statutory language is the first consideration." Dep't of Revenue v. Cent. Dade Malpractice Trust Fund, 673 So.2d 899, 900 (Fla. 1st DCA 1996) (citing St. Petersburg Bank & Trust Co., 414 So.2d at 1073).
The statute at issue here, section 627.727(9), states in pertinent part:
In connection with the offer [of nonstacked UM coverage], insurers shall inform the named insured, applicant, or lessee, on a form approved by the department, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations. When the named insured, applicant, or lessee has initially accepted such limitations, such acceptance shall apply to any policy which renews, extends, changes, supersedes, or replaces an existing policy unless the named insured requests deletion of such limitations and pays the appropriate premium for such coverage.
(Emphasis added.) The plain language of this section makes the insured's original selection of nonstacked UM coverage applicable to all renewals, extensions, and changes to an existing policy unless the insured specifically requests a change in UM coverage and pays the additional premium. Here, the Hilds never requested a change in UM coverage and never paid any premium for stacked UM coverage. Therefore, Scott Hild's original selection of nonstacked UM coverage remains in effect, and the Hilds are not entitled to stacked UM coverage for this accident.
In an effort to avoid the plain language of the statute, the Hilds argue that Scott Hild's original selection of nonstacked UM coverage no longer applies because the Hilds added a vehicle to their policy after Scott Hild signed the original UM selection form, thereby creating a "new policy." However, the addition of the Volvo to the Hilds' Nationwide policy constituted nothing more than a change to or an extension of the existing policy. No new policy was issued; instead, the Volvo was added to the existing policy. Therefore, Nationwide had no obligation to obtain a new UM selection form when the Volvo was added, and Scott Hild's original selection of nonstacked UM coverage continued to apply to the changed policy. Cf. Gasch v. Harris, 808 So.2d 1260 (Fla. 4th DCA 2002) (holding that the substitution of one vehicle for another on an existing policy did not require a new UM selection form); Gov't Employees Ins. Co. v. Stafstrom, 668 So.2d 631 (Fla. 5th DCA 1996) (holding *717 that the addition of a new vehicle to an existing policy did not create a "new policy" for purposes of section 627.727(1) and therefore did not require a new UM selection form).
This analysis is supported by a reading of section 627.727 as a whole. When an auto insurance policy is initially issued, the insurer must obtain a signed UM selection form on which the insured may reject UM benefits altogether, elect UM benefits in an amount less than the bodily injury liability limits, and elect either stacked or nonstacked UM coverage.[1] § 627.727(1), (9). The insurer's UM selection form must be preapproved by the Department of Insurance. § 627.727(1). Once the insured has made his or her initial selection concerning UM coverage, that selection remains in effect even if that policy is renewed, extended, changed, superseded, or replaced, unless the insured requests a change in writing and pays the additional premium. Id. In order to remind the insured of the UM coverage options and to facilitate any change in UM coverage, the insurance company must notify the insured "at least annually of her or his options" concerning UM coverage. Id. Both the notice of UM coverage options and the manner in which the notice is provided must be approved by the Department of Insurance. Id. Thus, section 627.727 does not contemplate or require that the insurer obtain a new UM selection form every time a change is made to the policy. In fact, it contemplates just the opposite. Once the insurer has obtained an initial UM selection form and as long as the insurer has provided the required annual notices, no further notice or discussion of UM coverages is required for an existing policy. The insured's original UM selection form controls unless the insured requests a change. While we recognize the Hilds' argument that an insured's desire for nonstacked UM coverage may change when an additional vehicle is added to an existing policy, section 627.727 simply does not require the insurer to obtain a new UM selection form in that instance.
The Hilds rely heavily on Fireman's Fund Insurance Co. v. Pohlman, 485 So.2d 418 (Fla.1986), for the proposition that the addition of a vehicle to an existing policy creates a "new policy" and therefore an obligation to obtain a new UM selection form. However, this reliance is misplaced. While the Pohlman decision did address the issue of UM coverage for a vehicle added to an existing policy, it did so in the context of a statutory amendment that broadened UM coverage for all insureds. The Pohlman court specifically stated that it neither considered nor intended to decide whether the addition of a new vehicle to an existing policy created a "new policy" for purposes of requiring a new UM selection *718 form. Id. at 420. Therefore, the Pohlman decision is simply inapplicable to this case.
Because the trial court's final judgment runs contrary to the plain language of section 627.727(9), we reverse the final judgment. The Hilds' argument that a new UM selection form is required when a new vehicle is added to an existing auto insurance policy is not supported by the plain statutory language. While such a requirement might be an improvement to the statutory scheme, this court cannot alter or amend the plain language chosen by the legislature.
Reversed and remanded.
COVINGTON, J., and MENENDEZ, MANUEL, JR., Associate Judge, concur.
NOTES
[1] Section 627.727(1), Florida Statutes (1997), states in pertinent part:

[Uninsured motorist coverage] is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy.... Unless an insured ... requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemental to any other policy which renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits when an insured or lessee had rejected the coverage.... The rejection or selection of lower limits shall be made on a form approved by the Insurance Commissioner.... The insurer shall notify the named insured at least annually of her or his options as to the coverage required by this section. Such notice shall be part of, and attached to, the notice of premium, shall provide for a means to allow the insured to request such coverage, and shall be given in a manner approved by the department.