DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

DAVID PARSONS and MARLA PARSONS,

Appellants,

v.

PATRICIA CULP,

Appellee.

No. 2D20-600
_____

September 17, 2021

Appeal from the Circuit Court for Highlands County; David V. Ward, Judge.

Jennifer J. Kennedy of Abbey, Adams, Byelick, & Mueller, L.L.P., Saint Petersburg, for Appellants.

Thomas E. Mooney of Mooney Colvin, P.L., Orlando, for Appellee.

LUCAS, Judge.

One March morning in 2016, David and Marla Parsons' Boston Terrier, Bogey, escaped from his tether in the Parsons' backyard, chased some egrets, and ran around a nearby dumpster. Unfortunately, Bogey's escapade coincided with the daily walk

Patricia Culp enjoyed with her Havanese-Maltese, Diamond. As dogs are wont to do, Bogey ran towards Diamond. And, in canine wont, Diamond tucked her tail and tried to run. In doing so, Diamond wrapped her leash around Ms. Culp's ankles, and Ms. Culp, an elderly lady, fell to the ground, breaking her femur and left leg.

Ms. Culp filed a claim against the Parsons premised on section 767.01, Florida Statutes (2016), a statute that, in pertinent part, states "[o]wners of dogs shall be liable for any damage done by their dogs to a person." The jury returned a million-dollar verdict in Ms. Culp's favor, and the Parsons now appeal the final judgment entered against them. The Parsons claim several errors with the circuit court's trial rulings, which we will address in the order of how we view their precedence.

I.

Throughout the proceedings leading up to the trial, the Parsons sought to avoid liability for Bogey's actions by ascribing liability to Ms. Culp as well as to the manufacturer or retail seller of Bogey's collar. With respect to Ms. Culp, the Parsons claimed she was comparatively negligent for her accident for a variety of

reasons: when she first noticed Bogey running loose, she drew closer to the dumpster to gain a better view despite knowing Diamond did not socialize well with other dogs; when Bogey ran towards her and Diamond she did not pick up her dog (which weighed approximately nine pounds); or alternatively, she did not shorten Diamond's training leash as she had learned during Diamond's obedience training. As to Bogey's collar, the Parsons sought to include the retail store they had purchased the collar from as a *Fabre* defendant[1] and proffered the testimony of a mechanical engineering expert, who would have opined that the collar broke because of defective manufacturing.

Before the trial commenced, the circuit court appeared receptive to allowing these defenses to proceed. However, on the morning of jury selection, the court granted Ms. Culp's motion in limine and denied the Parsons' motion for leave to amend their

---

[1] *See Fabre v. Marin*, 623 So. 2d 1182, 1187 (Fla. 1993) (holding that apportionment of comparative fault is not limited to parties to a lawsuit), *receded from in part on other grounds by Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc.*, 659 So. 2d 249 (Fla. 1995); *Salazar v. Helicopter Structural & Maint., Inc.*, 986 So. 2d 620, 622 n.1 (Fla. 2d DCA 2007) ("A '*Fabre* defendant' is a nonparty defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged.").

answer (as well as their requested jury instruction), stating, "The Defendants' affirmative defense products liability to an unknown company will not be allowed. . . . So any affirmative defense as far as products liability to Petco and/or a unknown company . . . for defective manufacturer is disallowed and that's not going to happen."

With respect to the comparative negligence defense, on the fourth day of the trial the presiding judge issued his ruling that the Parsons could not seek to hold Ms. Culp's alleged negligence against her. As the court explained:

> I don't see where the Court can legally infuse comparative negligence into a strict liability case. Now, I understand the defense argument that it's allowed by *Rattet[ v. Dual Security Systems, Inc.*, 373 So. 2d 948 (Fla. 3d DCA 1979)]. Of course, that was a Third DCA case prior to *Jones versus Utica Insurance Company*[, 463 So. 2d 1153 (Fla. 1985)]. . . . The *Rattet* court indicates that it is appropriate to do so and that comparative negligence considerations are available under a 767.01 case because they are available under a 767.[0]4 case.
>
> . . . *Jones* has made clear, and the plaintiff has continuously argued this, that there's not room in a strict liability statute for the avoidance of liability on the grounds of the plaintiff or the owner or some other third party also contributed to the injury, contributory or comparative negligence. . . . [B]ut I am not going to allow for a comparative causation determination by the jury. Causation is an all-or-nothing proposition. If the plaintiff

4

proves that the defendants' dog acted and that act was the cause of her injury and that act can be concurring with another act so long as . . . the defendants' acts through their dog, so long as the acts of the affirmative or aggressive act by the defendants' dog contributes substantially to producing such injury that concurring cause can't happen, that doesn't [alleviate] the defendant of liability.

The court did allow an intervening cause instruction. But as the court made clear, Ms. Culp's conduct would only be considered as it pertained to causation of her injuries, not as it pertained to comparative negligence. The verdict form the court ultimately used asked the jury if there was "an affirmative or aggressive act by the Parsons' dog which was a legal cause of loss, injury, or damage to the Plaintiff, Patricia Culp?"

The jury having answered that question in the affirmative, and the circuit court having entered a judgment on that verdict after denying the Parsons' motion for new trial and for remittitur, the Parsons now bring this appeal.

A.

We turn first to the circuit court's decision to preclude the Parsons from presenting a comparative negligence defense. That decision stemmed from the court's construction of section 767.01

5

and the case law interpreting it, and so we review this issue de novo. *See Van v. Schmidt*, 122 So. 3d 243, 252 (Fla. 2013) (applying de novo review to a pure question of law (citing *Bosem v. Musa Holdings, Inc.*, 46 So. 3d 42, 44 (Fla. 2010))); *Champagne v. State*, 269 So. 3d 629, 632 (Fla. 2d DCA 2019) ("Questions of statutory interpretation are reviewed de novo . . . ." (quoting *Eustache v. State*, 248 So. 3d 1097, 1100 (Fla. 2018))).

Section 767.01 reads, in its entirety: "Owners of dogs shall be liable for any damage done by their dogs to a person or to any animals included in the definitions of 'domestic animal' and 'livestock' as provided by s. 585.01." Florida courts have had several occasions to interpret section 767.01 over the years, and stare decisis binds us to follow their analysis. With respect to the section we are directly concerned with, 767.01, the view of this statute's relatively succinct statement of dog owners' liability for their dogs has evolved over the years.

After the statute was first enacted in 1881, the courts in Florida initially viewed the section as simply having removed the common law requirement of the owner's scienter or knowledge of his or her dog's vicious propensities (which, apparently, proved too

high a bar to prove in many cases) so that dog owners became "insurers" for their dog's vicious acts. *See Donner v. Arkwright-Boston Mfrs. Mut. Ins. Co.*, 358 So. 2d 21, 23-24 (Fla. 1978) (explaining that sections 767.01 and .04 were enacted in response to the historic difficulty of proving a dog owner's scienter, which the English common law had traditionally required); *Josephson v. Sweet*, 173 So. 2d 463, 464 (Fla. 3d DCA 1964) ("This statute [section 767.01] has been interpreted to constitute a dog owner as an insurer for the acts of his dog. As a result, the common law requirement of establishing prior knowledge of the owner of the vicious propensity of the dog was not necessary in order to recover for injury caused by such dog." (footnote omitted)).

The observation that section 767.01 made dog owners "insurers" of their dogs was likened to imposing "absolute liability" that "is not contingent upon a showing of the negligence of the owner, or scienter." *See Brandeis v. Felcher*, 211 So. 2d 606, 607 (Fla. 3d DCA 1968) (citing *Knapp v. Ball*, 175 So. 2d 808, 809 (Fla. 3d DCA 1965), *Vandercar v. David*, 96 So. 2d 227, 229 (Fla. 3d DCA 1957), and *Reid v. Nelson*, 154 F.2d 724, 725 (5th Cir. 1946)). Other courts construed section 767.01 as creating a form of strict

7

liability.  *See Allstate Ins. Co. v. Greenstein*, 308 So. 2d 561, 563 (Fla. 3d DCA 1975) (affirming trial court's decision not to apply consideration of comparative negligence because "[u]nder the statutory liability created by Section 767.01, the owner of a dog is cast virtually in the role of an insurer, and he is strictly liable for damage done to persons by his dog").

A plaintiff would still need to prove causation, *see Bozarth v. Barreto*, 399 So. 2d 370, 370-71 (Fla. 3d DCA 1981) (affirming final judgment in favor of defendants where "there was . . . sufficient evidence in the record for the jury to conclude, as it did, that the plaintiff Evelyn Bozarth's injuries were not proximately caused by any aggressive or affirmative act directed against said plaintiff by the defendant's dog"); that is, the plaintiff would have to show that the dog's acts were a legal cause of the damage the injured plaintiff claimed.  The role that causation should hold under this construction of section 767.01, however, created an analytical challenge—dogs being dogs, when can it be said that a dog's acts (apart from biting) are the cause of a subsequent injury?

The Florida Supreme Court provided guidance on that issue in *Jones v. Utica Mutual Insurance Co.*, 463 So. 2d 1153 (Fla. 1985).

In *Jones*, a twelve-year-old boy was injured by a wagon that was being pulled by a German Shepherd that was, in turn, chasing after another dog. *Id.* at 1155. The Florida Supreme Court rejected a district court of appeal's canine-classification approach to the causation query by posing some interesting questions:

> How is one to determine whether or not an animal's behavior is sufficiently active, or canine, or dispositive of the outcome, so as to render the owner liable for its conduct? When does a dog exercise canine characteristics? There is simply no way to define or administer such a standard and the parties would be at a loss to evaluate when a dog can be found not to have acted like a dog. Is it meaningful to conclude the dog in this case was exhibiting canine characteristics when it chased another dog but acting less like a dog because it was tied to a wagon? We think not. The trial of a suit for damages should never degenerate to a battle of experts giving opinions as to whether a dog exercised canine characteristics or human characteristics.

*Id.* at 1156.

The *Jones* court reaffirmed that section 767.01 "is a strict liability statute" but offered a caveat about that pronouncement, as well as a new approach as to how causation ought to be viewed in these cases:

> We reject the view that the legislature intended strict liability for dog owners in every instance where the actions of a dog are a factor in an injury. Clearly the rules of ordinary causation should apply. Thus, an

9

affirmative or aggressive act by the dog is required. This "affirmative act" requirement is a reasonable safeguard insofar as it forbids the imposition of liability in cases in which the animal is merely a passive instrumentality in a chain of events leading to injury. Even a strict liability statute should not reach that far. This interpretation is consistent with the general notion of proximate causation, since other factors would constitute superceding or overwhelming causes when the dog is merely passive or retreating.

Thus, it also cannot be said that liability is only appropriate when the animal actually touches the plaintiff, for animals and people can *cause* injuries in a variety of ways without actually touching the injured party. Nor is there room in this strict liability statute for the avoidance of liability on the ground that the plaintiff or the owner or some third party also *contributed* to the injury. The implications of attempting to administer any of these alternative standards to this case in an attempt to distinguish this case on any of those bases would quickly become mired in metaphysics.

*Id.* at 1156-57.

The *Jones* formulary for causation has continued along in Florida jurisprudence without substantial modification. A dog owner is virtually an insurer and liable for a non-bite related injury his or her dog causes if the dog displayed some "aggressive or affirmative act" that could be said to be a legal cause of the injury. *See Cohen v. Wall,* 576 So. 2d 945, 946 (Fla. 2d DCA 1991) ("[I]t is not necessary to prove that the dog actually touched Mrs. Wall in

10

order to establish liability under section 767.01.  It is, however, necessary to establish an affirmative or aggressive action on the part of the dog, and to show that such action was the proximate cause of Mrs. Wall's injuries." (citations omitted)).

B.

So far the decisions we have canvassed are, like the case before us, cases that arose under section 767.01, where a dog caused injury to someone, but not by biting them.  Section 767.04 is a separate statute, entitled "Dog owner's liability for damages to persons bitten."  This section states:

> The owner of any dog that bites any person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, is liable for damages suffered by persons bitten, regardless of the former viciousness of the dog or the owners' knowledge of such viciousness.  However, any negligence on the part of the person bitten that is a proximate cause of the biting incident reduces the liability of the owner of the dog by the percentage that the bitten person's negligence contributed to the biting incident.  A person is lawfully upon private property of such owner within the meaning of this act when the person is on such property in the performance of any duty imposed upon him or her by the laws of this state or by the laws or postal regulations of the United States, or when the person is on such property upon invitation, expressed or implied, of the owner.  However, the owner is not liable, except as to a person under the age of 6, or unless the damages are proximately caused by a

11

negligent act or omission of the owner, if at the time of any such injury the owner had displayed in a prominent place on his or her premises a sign easily readable including the words "Bad Dog." The remedy provided by this section is in addition to and cumulative with any other remedy provided by statute or common law.

Whatever else he may have done during his escape from the Parsons' backyard, Bogey never bit Ms. Culp. Her injuries were the result of a fall, not a bite. If this were a matter of first impression, we would hold that section 767.04, and the bite-related defenses it includes, is simply inapplicable to this case. *Cf. Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946-47 (Fla. 2020) ("In interpreting the statute, we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means[]' . . . [and] that 'every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it.' " (first and fourth alteration in original) (first quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012); then quoting *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment,*

12

288 So. 3d 1070, 1078 (Fla. 2020))); *Josephson*, 173 So. 2d at 465 ("It is obvious from the careful reading of the two sections that § 767.01 was superseded by § 767.04 only in regard to dog bites, because § 767.04 says 'bite' not injury. It is inconceivable that the legislature intended bite to be synonymous with injury and as inclusive.").

We are, however, bound to hold otherwise because the provisions in sections 767.01 and .04 have come to be intertangled in our common law. In *Rattet v. Dual Security Systems, Inc.*, 373 So. 2d 948, 949 (Fla. 3d DCA 1979), a car dealership employee injured himself when guard dogs at the dealership's lot chased him up a fence. The plaintiff filed separate counts against the security company that provided the dogs under sections 767.01 and .04.[2]

_____

[2] By the time *Rattet* came before the Third District, the Florida Supreme Court had concluded that section 767.04 was a stand-alone, statutory cause of action that superseded any common law claim of negligence in circumstances covered by the statute. *See Donner*, 358 So. 2d at 24 ("[W]e can only conclude that in making the dog owner the insurer against damage done by his dog, thereby supplanting the common law negligence-type action, the legislature intended to shoulder him with the burden of his animal's acts except in the specific instances articulated in the enactment where the dog is provoked or aggravated or the victim is specifically warned by a sign."); *Carroll v. Moxley*, 241 So. 2d 681, 682 (Fla. 1970) ("The contention that Plaintiffs have a cause of action both

13

*Id.* at 950.  The Third District disposed of the plaintiff's section

767.04 claim (because the plaintiff had not been bitten; he fell from

a fence).  *Id.* at 950.  The court also affirmed the summary

judgment against the plaintiff's section 767.01 claim because the

dealership had posted "bad dog" signs around the lot.  *Id.* at 950-

51.  Although the posting of such signs would constitute a defense

under a section 767.04 dog bite claim, the Rattet court reasoned

that the statutory defenses listed under section 767.04 should also

be available to a section 767.01 claim.  *Id.* at 951.  "Holding to the

contrary," the court remarked, "would bring about the absurd

results of (1) having proximate causation being the only defense

available under Section 767.01, and (2) permitting a plaintiff to

recover damages under Section 767.01 despite the fact that he or

she provoked the dog or 'bad dog' signs had been properly posted."

*Id.* (footnote omitted).  And that "would violate the well established

principle that statutes must not be construed so as to produce

---

under Fla.Stat. s 767.04, F.S.A., and the common law is without
merit. . . .  It is concluded that Fla.Stat. s 767.04, F.S.A.,
supersedes the common law, only in those situations covered by the
statute.").

14

unreasonable or ridiculous consequences." *Id.* (citing 30 Fla. Jur. *Statutes* § 122 (1974)).

A decade after *Rattet,* the Florida Supreme Court addressed a similar claim when a police officer was injured while investigating a possible house burglary. *See Kilpatrick v. Sklar,* 548 So. 2d 215, 216 (Fla. 1989). In trying to sneak up on the burglar in the backyard, the officer drew the attention of the homeowner's four Great Danes, who chased him up a wrought iron fence that impaled the officer's calf. *Id.* Consistent with *Rattet,* the Third District held that the Fireman's Rule, a defense based in the common law,[3] was not available to the homeowners because sections 767.01 and .04 had supplanted any common law claims or defenses. *Id.* The Florida Supreme Court agreed, approved the district court's decision, and adopted *Rattet*'s rule in its entirety:

> We agree with the Third District Court of Appeal in the instant case that there are no common law defenses to the statutory cause of action based on sections 761.01 and 767.04, Florida Statutes (1981). . . . *We also agree with the Third District that only those defenses provided*

---

[3] *See Rishel v. E. Airlines, Inc.,* 466 So. 2d 1136, 1138 (Fla. 3d DCA 1985) ("The fireman's rule, as generally framed, provides that an owner or occupant of property is not liable to a police officer or a firefighter for injuries sustained during the discharge of the duties for which the policeman or fireman was called to the property.").

15

*by statute under section 767.04 apply. We also agree that those defenses apply to a claim under section 767.01.*

*Id.* at 218 (emphasis added).

*Sklar*'s holding concerning the applicability of section 767.04 defenses to section 767.01 claims has not been modified or altered since its issuance.

## C.

With this backdrop, we can now turn to the merits of the Parsons' argument. We do so by first acknowledging that the circuit judge below faced a dilemma: should the court apply *Jones*' pronouncement, "[n]or is there room in this strict liability statute for the avoidance of liability on the ground that the plaintiff or the owner or some third party also *contributed* to the injury," 463 So. 2d at 1157, or *Sklar*'s holding that the defenses of section 767.04—which now include comparative negligence—are available in a section 767.01 claim? Although the judge gave this issue careful deliberation, we believe the court erred when it deprived the Parsons of their comparative negligence defense under section 767.04.

16

Granted, *Sklar* did not purport to recede from *Jones*. But *Sklar* substantively altered the interplay between sections 767.01 and .04, and it did so in a way that had not been contemplated when *Jones* was issued. It was, in short, an evolution in the common law. *Cf. Tran v. Bankcroft*, 648 So. 2d 314, 316 (Fla. 4th DCA 1995) ("[H]istorically, tort liability for injuries caused by dogs has evolved with its very own unique set of statutory and common law rules."). And *Sklar*'s pronouncement was unequivocal and unqualified: the defenses of section 767.04, whatever they may be, are available to defendants in a section 767.01 claim.

Comparative negligence was added to section 767.04 in 1993, some four years after *Sklar*, *see* ch. 93–13, § 1, at 117, Laws of Fla., and it is ordinarily assumed that the legislature is aware of the state of the common law when it enacts or amends a statute. *Cf. Baskerville-Donovan Eng'rs, Inc. v. Pensacola Exec. House Condo. Ass'n*, 581 So. 2d 1301, 1303 (Fla. 1991) ("[S]tatutes should be construed with reference to the common law, and we must presume that the legislature would specify any innovation upon the common law." (citing *Ellis v. Brown*, 77 So. 2d 845, 847 (Fla. 1955))). In line with *Sklar* (and in the absence of a legislative pronouncement of

17

intent to otherwise alter the common law that had developed prior to the amendment's passage), we conclude that the comparative negligence defense provided under section 767.04 is available to a litigant defending against a section 767.01 claim.

It is true, as Ms. Culp points out, section 767.04's defense of comparative fault, like the other defenses in that section, speaks in terms of "persons bitten" and "dog bites," which, under an ordinary, plain meaning of the section's text would not seem applicable to this case. Section 767.04 has always been rife with references to dog bites. That was equally true when the Florida Supreme Court decided *Sklar*. We have to believe the *Sklar* court was aware of the potential linguistic awkwardness of applying the bite-related section's defenses to non-bite related claims when it adopted *Rattet*'s rationale. Consistent with *Sklar* and how our sister district courts of appeal have viewed its application of sections 767.01 and .04, we hold that a defendant to a section 767.01 claim is entitled to present all the defenses, including comparative negligence, that are set forth in section 767.04. *Accord Davison v. Berg*, 243 So. 3d 489, 490 n.1 (Fla. 1st DCA 2018) ("The defenses found in section 767.04, which concerns dog bites, are equally applicable to 'damage' from

dogs as set out in section 767.01." (citing *Sklar,* 548 So. 2d at 218));

*Associated Home Health Agency, Inc. v. Lore,* 484 So. 2d 1389, 1390

(Fla. 4th DCA 1986) (citing *Rattet* and noting that the statutory

defenses of section 767.04 applied to an action under section

767.01).

Our dissenting colleague would prefer not to follow *Sklar.*

While acknowledging that we, as a lower court, should not "lightly

brush aside the contents of an opinion of the Florida Supreme

Court," that is precisely what the dissent does. For if

pronouncements such as those in *Sklar* can be waved away as dicta

*by an inferior tribunal,* we may find ourselves having to frequently

repeat our own holdings lest the trial courts creatively construe out

of existence any of our legal rules with which they may not agree.

That is not how our system of judicial review should work. As a

lower court, we must leave it to the Florida Supreme Court to clarify

or recede from what it pronounced in *Sklar,* should it ever choose to

do so. *See Hoffman v. Jones,* 280 So. 2d 431, 434 (Fla. 1973) ("To

allow a District Court of Appeal to overrule controlling precedent of

this Court would be to create chaos and uncertainty in the judicial

forum, particularly at the trial level.").[4]

---

[4] Ironically, *Lewis v. State*, 34 So. 3d 183, 186 (Fla. 1st DCA 2010), a case cited by the dissent for the proposition that we can bypass unequivocal legal pronouncements from the Florida Supreme Court so long as we construe them as "dicta" actually illustrates why we should be circumspect about what we append the "dicta" label to, if one follows the course of the issue in *Lewis* to its conclusion. In *Lewis*, the First District determined that the Florida Supreme Court's statement in *Brooks v. State*, 918 So. 2d 181 (Fla. 2005), "that aggravated child abuse cannot serve as the underlying felony in a felony murder charge if only a single act led to the child's death was not a holding in the case," because the *Brooks* court ultimately affirmed the defendant's conviction. *Id.* at 186. *Brooks*' pronouncement about felony murder based on aggravated child abuse was "immaterial to the outcome of the case," the First District opined, and so the court did not feel compelled to follow the rule announced in *Brooks* (though the *Lewis* opinion did go on to provide an alternate rationale in case the statement in *Brooks* was not dicta).

Two years after *Lewis*, the Florida Supreme Court issued *State v. Sturdivant*, 94 So. 3d 434 (Fla. 2012). *Sturdivant* devoted a substantial amount of analysis explaining why what the *Lewis* court had dismissed as "dicta," was, in fact, a wrongly decided holding—which the court then receded from. *Id.* at 440-42. "In light of the nature of the merger doctrine and the plain language of the Florida felony-murder statute, we agree with Justice Lewis's dissent in *Brooks* that the holding was contrary to the plain language of the statute and legislative intent." *Id.* at 441. Nowhere in *Sturdivant* did the court suggest its prior statement in *Brooks* had been dicta. To the contrary, what the district court of appeal had deemed dicta of the Florida Supreme Court, the Florida Supreme Court held was an erroneous holding.

II.

Our view of how this facet of the law has developed leads us to conclude that the circuit court properly excluded the Parsons' proffered *Fabre* defense. Again, the premise that sections 767.01 and .04 supplanted common law negligence claims in cases within the statutes' ambit is well settled. *See Sklar*, 548 So. 2d at 218; *Donner*, 358 So. 2d at 23-24; *Carroll*, 241 So. 2d at 682; *Huie v. Wipperfurth*, 632 So. 2d 1109, 1111 (Fla. 5th DCA 1994) ("[T]he supreme court consistently has reaffirmed the principle that chapter 767 supersedes the common law in actions against dog owners for injuries caused by their dogs."); *see also Reed v. Bowen*, 512 So. 2d 198, 199 (Fla. 1987) ("[S]ection 767.04 makes the dog owner an insurer against damage caused by his dog, subject to certain enumerated exceptions, thus modifying the common law basis for recovery grounded in negligence, and superseding common law defenses."); *Belcher Yacht, Inc. v. Stickney*, 450 So. 2d 1111, 1113 (Fla. 1984) ("*Carroll* and *Donner*, decided thirteen and five years ago, respectively, placed the legislature on notice that section 767.04, Florida Statutes, enacted in 1949, superseded the common law on dog bites. There has been no action by the

21

legislature to amend this law and we are not disposed to revisit the issue.").  Only those defenses set forth under section 767.04—which, under *Sklar*, have become applicable to section 767.01 claims—are available to avoid the "absolute" or "strict" liability section 767.01 imposes.  *See Donner*, 358 So. 2d at 26; *Davison*, 243 So. 3d at 490 & n.1; *Huie*, 632 So. 2d at 1112; *see also Arellano v. Broward K-9*, 207 So. 3d 351, 353 (Fla. 3d DCA 2016) ("Arellano's . . . claim is founded upon section 767.04, which effects the legislative purpose of imposing on a dog owner strict liability for dog bite damages.  The statute prescribes a limited exception to such strict liability: the plaintiff's comparative negligence.").

Ms. Culp points out, correctly, that section 767.04 does not include a third-party or *Fabre* defense in its text.  And the statute that governs allocation of fault to nonparties, section 768.81(3)(a), Florida Statutes (2016), includes the preface, "[i]n a negligence action"—which, under Florida precedent, is not the cause of action at issue here.  Thus, she argues, a third party's alleged comparative fault is not a lawful defense to her section 767.01 claim.  Her point is well taken.

22

If the legislature wishes to include the negligence of third-party defendants as a statutory defense to dog-related injury claims, it is free to do so. We, however, cannot. *See State v. Burris*, 875 So. 2d 408, 413-14 (Fla. 2004) ("To construe the statute in a way that would extend or modify its express terms would be an inappropriate abrogation of legislative power." (citing *Holly v. Auld* 450 So. 2d 217, 219 (Fla. 1984))); *Nationwide Mut. Fire Ins. Co. v. Hild*, 818 So. 2d 714, 718 (Fla. 2d DCA 2002) ("[T]his court cannot alter or amend the plain language chosen by the legislature."); *Huie*, 632 So. 2d at 1112 (Fla. 5th DCA 1994) ("[U]ntil the legislature mandates otherwise, section 767.04 supersedes the common law and provides both the exclusive remedy and defenses in a dog-bite action."). The circuit court correctly excluded this defense (and the evidence related to it) from the jury's consideration.

## III.

Lastly, we will address an evidentiary issue concerning economic damages that arose during the trial. The Parsons claim the circuit court erred when it permitted Ms. Culp to admit into evidence invoices showing the entire amount her providers billed Medicare for her past medical expenses, rather than the reduced

23

amount these providers actually accepted. The difference between the two amounts, $47,882.32 versus $151,000.01, totaled $103,117.69. Notably, the jury was not tasked with determining the amount of Ms. Culp's past medical expenses in its verdict. Following the circuit court's ruling on the bills' admissibility, the parties stipulated to the amount of past medical expenses Ms. Culp would be entitled to recover. Thus, the issue here is purely evidential. The Parsons maintain that the erroneous admission of these bills may have impacted the jury's award of noneconomic damages and that, therefore, they are entitled to a new trial. That is an issue we review for abuse of discretion. *Lively v. Grandhige,* 313 So. 3d 917, 919 (Fla. 2d DCA 2021) ("Generally, we review the denial of motion for new trial under the abuse of discretion standard . . . ."); *Pena v. Vectour of Fla., Inc.,* 30 So. 3d 691, 692 (Fla. 1st DCA 2010) ("Trial court rulings on motions for new trial are given great deference on appeal. The possibility of reasonable disagreement does not constitute an abuse of discretion." (citations omitted)).

The basis of the Parsons' argument derives from our holding in *Cooperative Leasing, Inc. v. Johnson,* 872 So. 2d 956 (Fla. 2d DCA

24

2004). In *Johnson,* we held that "the appropriate measure of compensatory damages for past medical expenses when a plaintiff has received Medicare benefits does not include the difference between the amount that the Medicare providers agreed to accept and the total amount of the plaintiff's medical bills." *Id.* at 960. We further stated that the trial court in *Johnson* "should have granted the appellants' motion in limine and prohibited Johnson from introducing the full amount of her medical bills into evidence." *Id.*

Ms. Culp counters that the Florida Supreme Court, in *Joerg v. State Farm Mutual Automobile Insurance Co.*, 176 So. 3d 1247, 1253 (Fla. 2015) (holding that evidence of eligibility for future benefits from Medicare, Medicaid, and other social legislation was inadmissible because "Medicare benefits are both uncertain and a liability . . . due to the right of reimbursement that Medicare retains"), "abrogates this [c]ourt's decision in *Johnson* with regard to its treatment of Medicare recipients." Alternatively, she argues, the admission of these medical bills was harmless given the facts of this case.

After the trial in this case had concluded (and after the Parsons filed their initial brief in this appeal), we addressed this

25

very issue in *Dial v. Calusa Palms Master Ass'n,* 308 So. 3d 690 (Fla. 2d DCA 2020). In *Dial,* we concluded that *Joerg*'s holding was confined to the admissibility of evidence concerning a plaintiff's future medical expenses covered by Medicare. *Id.* at 691. We observed that our foundational concern in *Johnson*—"that plaintiffs ought not to receive a windfall to recover the purported value of *past* medical 'expenses' that were never paid"—was not addressed in *Joerg. Id.* at 692. We need not restate the entirety of *Dial*'s holding and rationale. Since essentially the same argument about *Joerg*'s purported abrogation of *Johnson* was presented in *Dial,* the same result in *Dial* obtains here. The circuit court should not have allowed the bills of past medical expenses for the jury's consideration when those bills were paid at a reduced amount by Medicare.[5]

But the Parsons ask us to now go a step further. Although neither *Johnson* nor *Dial* ordered a new trial following the

_____

[5] At the conclusion of the *Dial* opinion, we certified a question of great public importance concerning this issue. 308 So. 3d at 692. On April 26, 2021, the Florida Supreme Court accepted jurisdiction of *Dial. Dial v. Calusa Palms Master Ass'n,* SC21-43, 2021 WL 1604008, at *1 (Fla. Apr. 26, 2021).

26

evidentiary error of admitting the unreduced past medical bills, the Parsons contend we should do so here. On the facts of this case, we find that is a step too far.

The jury was never called upon to determine the amount of past medical expenses at the trial in this case. Nor was any suggestion made to the jury that they ought to ascribe noneconomic damages in some proportion to their award of economic damages. The manner in which the two issues—economic and noneconomic damages—were presented appeared to keep them separate from each other. And the past medical bills were never elaborated upon during closing statements. In reviewing the entirety of the record, then, we do not believe the admission of these bills impacted the remainder of the jury's verdict in this case such that the circuit court abused its discretion when it denied the motion for new trial. *See Ring Power Corp. v. Condado-Perez*, 219 So. 3d 1028, 1034 (Fla. 2d DCA 2017) ("[I]n order for an appealing party to be successful in a challenge to a judgment based on 'the improper admission or rejection of evidence,' the appellate court must conclude 'after an examination of the entire case . . . that the error[s] complained of ha[ve] resulted in a miscarriage of justice.'" (second and third

27

alterations in original) (quoting *Fla. Inst. for Neurologic Rehab., Inc.*

*v. Marshall,* 943 So. 2d 976, 979 (Fla. 2d DCA 2006))).[6]

## IV.

The circuit court was correct when it precluded the Parsons

from presenting the alleged manufacturing defect of Bogey's collar

to the jury for apportionment of a third party's fault. But the

_____

[6] Nor do we find this evidentiary error to have been harmful, such that reversal for an entirely new trial is necessary. We recognize that under *Special v. West Boca Medical Center,* 160 So. 3d 1251, 1256 (Fla. 2014), "the responsibility for proving harmless error remains with the beneficiary of the error, who must demonstrate that there is no reasonable possibility that the error contributed to the verdict," but for the reasons we have already relayed, we do not believe the error of admitting these documents rose to that level of harm. *See* § 59.041, Fla. Stat. (2016) ("No judgment shall be set aside or reversed, or new trial granted . . . on the ground of . . . the improper admission or rejection of evidence . . . unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice."). Admittedly, as was discussed during oral argument, none of us can peer into the jury room to discern for certain what, if any, impact this evidence may have had. But that is true in all jury trials where an evidentiary error was made. We do not read *Special*'s burden as imposing that extraordinary kind of showing onto appellees—which, in truth, would be nearly impossible to ever satisfy. Rather, we must simply take the record we have and, from the vantage we hold, answer the question *Special* poses. We have endeavored to do so here and conclude, on this record, that it was not an abuse of discretion for the circuit court to deny the Parsons' motion for new trial, and the erroneous admission of these bills did not contribute to the jury's verdict.

deprivation of the Parsons' comparative negligence defense necessitates reversal for a new trial on that issue. We do not believe the erroneous admission of Ms. Culp's past medical bills necessitates a new trial on any other issues. We therefore reverse the court's judgment with respect to the issue of comparative fault and remand this case for a new trial that will be limited solely to that issue. *See Barrientos v. Hyre*, 805 So. 2d 981, 982 (Fla. 2d DCA 2001) ("The error requiring a new trial affected only the issue of comparative fault, and the new trial must be limited to that issue." (citing *Nash v. Wells Fargo Guard Servs.*, 678 So. 2d 1262, 1263-64 (Fla. 1996))); *Philip Morris USA, Inc. v. Martin*, 262 So. 3d 769, 777 (Fla. 4th DCA 2018) (noting that "it is well established that a reversal based on a comparative fault error does not affect or require a new trial on a jury's determination of compensatory damages" but "[i]nstead such an error simply requires a remand for apportionment of fault" and citing cases). Accordingly, we reverse the judgment below and remand this case for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded with directions.

LABRIT, J., Concurs.
ATKINSON, J., Concurs in part and dissents in part.

ATKINSON, J., Concurring in part and dissenting in part.

I agree with the majority that, according to a proper interpretation of sections 767.04 and 767.01, Florida Statutes (2016), the statutory defenses set forth in the former—the dog-bite statute—should not apply to causes of action brought under the latter—the dog-damage statute. The majority is also correct to note that the Florida Supreme Court has pronounced that the statutory defenses in section 767.04 *do apply* to a claim brought under section 767.01. *See Kilpatrick v. Sklar,* 548 So. 2d 215, 218 (Fla. 1989). However, unlike the majority, I do not believe that the pronouncement in *Sklar* compels us to apply section 767.04's comparative negligence defense to causes of actions brought under section 767.01. While district courts of appeal are bound by "*controlling* precedents set by the Florida Supreme Court," *State v. Lott,* 286 So. 2d 565, 566 (Fla. 1973) (emphasis added), the pronouncement in *Sklar* that the defenses in the dog-bite statute apply to actions brought under the dog-damage statute was dicta, not binding precedent. *See Lewis v. State,* 34 So. 3d 183, 186 (Fla.

30

1st DCA 2010) ("[A] pronouncement of law that is ultimately immaterial to the outcome of the case" is not "part of the holding in the case" and is "not binding on this court.").

The only defense at issue in *Sklar* was a common law defense. The question was whether the Fireman's Rule was an available "defense for a dog owner regarding a claim for injuries under section 767.01," *Sklar*, 548 So. 2d at 215, and none of the statutory defenses in section 767.04 were at issue. *See id.* at 218 (holding that the defense did not apply to the claim because "there are no common law defenses to the statutory cause of action based on sections 767.01 and 767.04"). As such, the court's unnecessary expression of agreement "with the Third District that only those defenses provided by statute under section 767.04 apply" and "that those defenses [also] apply to a claim under section 767.01," *id.* (citing *Rattet v. Dual Security Systems, Inc.*, 373 So. 2d 948 (Fla. 3d DCA 1979)), was an inessential statement constituting nonbinding dicta. *See Pedroza v. State*, 291 So. 3d 541, 546 (2020) ("Any statement of law in a judicial opinion that is not a holding is dictum," and a "holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually

31

decided, (2) are *based upon the facts of the case*, and (3) lead to the judgment." (emphasis added) (quoting *State v. Yule*, 905 So. 2d 251, 259 n.10 (Fla. 2d DCA 2005) (Canady, J., specially concurring))). A statement in a judicial opinion that is "unnecessary to the resolution of the issue before the court" constitutes dicta and is "not controlling judicial precedent." *Cirelli v. Ent*, 885 So. 2d 423, 427 (Fla. 5th DCA 2004). The statement in *Sklar* that the statutory defenses of section 767.04 apply to causes of action brought under section 767.01 does not have the weight of controlling precedent.

While I would agree that district courts should not lightly brush aside the contents of an opinion of the Florida Supreme Court, district courts are not bound to follow those pronouncements that constitute dicta. *Sims v. State*, 743 So. 2d 97, 99 (Fla. 1st DCA 1999) ("While dicta from the Florida Supreme Court may afford welcome guidance, such passages lack the binding force of precedent." (quoting *Davis v. State*, 594 So. 2d 264 (Fla.1992) (citation omitted))); *Horton v. Unigard Ins., Co.*, 355 So. 2d 154, 155 (Fla. 4th DCA 1978) ("The rule seems to be that dictum in an opinion by the Supreme Court of Florida, while not binding as precedent, is persuasive because of its source."), *disapproved on*

*other grounds by Dressler v. Tubbs*, 435 So. 2d 792, 794 (Fla. 1983); *cf. Estate of Williams v. Tandem Health Care of Fla., Inc.*, 899 So. 2d 369, 374 (Fla. 1st DCA 2005) (treating language that "was not dispositive of the issue before the supreme court" as dicta).

It is especially important to recognize that Supreme Court dicta is merely persuasive when it competes against a contrary, binding holding of the Supreme Court. *Cf. O'Sullivan v. City of Deerfield Beach*, 232 So. 2d 33, 35 (Fla. 4th DCA 1970) ("We acknowledge that dictum of the Supreme Court *in the absence of a contrary decision* by that court should be accorded persuasive weight by us." (emphasis added) (citing *Milligan v. State*, 177 So. 2d 75 (Fla. 1965))). As acknowledged by the majority, the pronouncement in *Sklar* that the section 767.04 defenses apply to section 767.01 claims is contrary to the Florida Supreme Court's earlier *Jones* opinion, in which the Court held that there is no "room in this strict liability statute[, section 767.01,] for the avoidance of liability on the ground that the plaintiff or the owner or some third party also *contributed* to the injury." *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985) (emphasis in original). The Florida Supreme Court frequently reiterates that it does not

33

overrule itself sub silentio and often admonishes lower courts against inferring such an overruling of prior precedent based on dicta in subsequent opinions. *See, e.g., F.B. v. State*, 852 So. 2d 226, 228–29 (Fla. 2003) (counseling district courts against reliance on its own dicta that is in conflict with its prior express holdings, because the "Court does not intentionally overrule itself sub silentio"); *see also Abaddon, Inc. v. Schindler*, 826 So. 2d 436, 438 (Fla. 4th DCA 2002) ("[A]lthough this [subsequent Florida Supreme Court] dicta seems to contradict [a prior holding of the Florida Supreme Court,] our supreme court has held that '[w]here a court encounters an express holding from this Court on a specific issue and a subsequent contrary dicta statement on the same specific issue, the court is to apply our express holding in the former decision until such time as this Court recedes from the express holding.' " (alteration in original) (quoting *Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002))); *Bessey v. Difilippo*, 951 So. 2d 992, 995 n.6 (Fla. 1st 2007) (disregarding subsequent Florida Supreme Court dicta that contradicted a prior holding of that court) (citing *Puryear*, 810 So. 2d at 905)); *cf. Stevens v. State*, 226 So. 3d 787, 792 (Fla.

34

2017); *Barthelemy v. Safeco Ins. Co. of Illinois*, 257 So. 3d 1029, 1031–32 (Fla. 4th DCA 2018).

It must be noted that the holding of *Jones*—that comparative negligence is not available as a defense to an action based on section 767.01—was addressing the common law defense, because the statutory comparative negligence defense had not yet been added to either statute at the time the opinion was issued. However, because the statutory comparative negligence defense was added only to section 767.04, the dicta in *Sklar*—generally pronouncing that the defenses in section 767.04 apply to claims under section 767.01—is in irreconcilable tension with *Jones*'s specific holding that comparative negligence is inapplicable to claims under section 767.01. The issue on appeal in *Sklar* had nothing to do with statutory defenses, but rather the question of whether a common law defense applied to the statutory cause of action under section 767.01. *Sklar*, 548 So. 2d at 215 (addressing "application of the Fireman's Rule . . . as a defense for a dog owner regarding a claim for injuries under section 767.01"). We should not give more weight to the *Sklar* opinion's inessential reference to the applicability of section 767.04 defenses to section 767.01 claims

35

than we do the Florida Legislature's decision to add a comparative negligence defense *only to section 767.04.* I am confident, given the language of its opinion, that the majority would agree that our fealty must be to the text of the legislative pronouncements we are interpreting. *See* Maj. Op. at I.A. (citing *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946–47 (Fla. 2020) ("In interpreting the statute, we follow the 'supremacy-of-text principle'—namely, the principle that 'the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' " (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)))). And while district courts are bound to apply the holdings of the Florida Supreme Court, they should not consider themselves bound to follow Florida Supreme Court dicta that is patently in conflict with the language of the statutory scheme they are interpreting and that would constitute a receding from prior Supreme Court precedent sub silentio. *See Garcia v. Dyck-O'Neal, Inc.*, 178 So.3d 433, 436 (Fla. 3d DCA 2015) ("When the clear and unambiguous language of a statute commands one result, . . . while dicta from case decisions might suggest a different result," the language of the statute must

36

be followed.); *Sturdivant*, 84 So. 3d at 1052 (Rowe, J., dissenting) ("Although dicta from the Florida Supreme Court 'may afford welcome guidance . . . such passages lack the binding force of precedent.' In fact, in cases such as this one, where the Legislature has clearly declared a contrary intent, *such dicta must be disregarded*." (emphasis added) (first quoting *Sims*, 743 So.2d at 99; and then citing *Estate of Williams ex rel. Williams v. Tandem Health Care of Fla., Inc.*, 899 So. 2d 369, 374 (Fla. 1st DCA 2005)). Because we should not apply the dicta in *Sklar* to the question of whether the comparative negligence defense in section 767.04 should be applied to cases brought under section 767.01, I would affirm the judgment of the trial court. I, therefore, respectfully dissent from the majority opinion to the extent that it reverses the judgment and remands for a new trial and holds that the trial court erred by depriving the Parsons of a comparative negligence defense.[7]

_____

[7] I concur in result only with Part II of the majority opinion concluding that the circuit court did not err by excluding the Parsons' comparative fault (*Fabre*) defense based on the products liability of a third party because such common law defenses are inapplicable to claims brought under section 767.01. And I concur in result only with Part III of the majority opinion concluding that

the trial court did not abuse its discretion by denying the Parsons' motion for new trial based on the admission of evidence of past medical expenses in an erroneous amount.